BREDENBURG v. BARDIN.

1. PRESUMPTIONS.—A church corporation having made a deed of conveyance to a lot of land which they were empowered to sell "with the consent and advice of their session," the deed, after a lapse of twenty-five years, will be presumed to have been made with such consent, the absence of such consent not being shown, and the session of the church not having objected.

2. RETROSPECTIVE STATUTE—SURVIVING EXECUTOR.—The statute that authorized a surviving executor to execute a power of sale given by will to executors, being remedial in character, and also by force of its terms, applies to wills executed and probated before the statute was passed.

3. POWER IN TRUST—SURVIVOR.—Where lands are devised to two executors, with a power to sell and divide proceeds between one of the executors and another person, it is a power in trust, which, independently of the act of 1876, survived and could be validly executed by the surviving executor.

Before WITHERSPOON, J., Charleston, December, 1891.

This was a controversy between Henrietta Bredenburg, surviv-

·ing executrix of Luder Bredenburg, and Isaac V. Bardin, submitted without action.    The opinion fully states the case.

*Messrs. Mordecai & Gadsden*, for appellant.

*Mr. John F. Ficken*, contra.

April 20, 1892.    The opinion of the court was delivered by

Mr. JUSTICE McGOWAN.    This was a controversy submitted without action.    "On September 1, 1891, the plaintiff and defendant entered into a written agreement for the sale and purchase of the lot of land and buildings thereon, situate on the northwest corner of Calhoun and St. Philip Streets, in the city of Charleston, S. C., for the sum of $2,400, one-half cash, balance in twelve months, with interest at 7 per cent. per annum, secured by purchase money bond and mortgage.    The plaintiff, Henrietta Bredenburg, as surviving executrix of Luder Bredenburg, deceased, has tendered to the defendant, Isaac V. Bardin, the conveyance of said premises, reciting the will of Luder Bredenburg, hereafter referred to, and claiming to convey to him under and by virtue of the power therein contained.    The defendant, Isaac V. Bardin, declines to accept the title tendered, claiming that it is not such a marketable title as he is bound to accept, for the reasons herein set forth :

"In the year 1849,. Maria C. Moore, by a deed bearing date 6th of January of that year, recorded in the register of mesne conveyance office for Charleston County, book B, 12, page 325, conveyed the premises in question to the Second Presbyterian church of the city and suburbs of Charleston, said deed reciting that Richard Moore, her late husband, previous to his death, was desirous of building on the lots and lands hereinafter described, so that the interest and income therefrom should be applied forever to the promotion of foreign missions, according to the faith and discipline of the Presbyterian Church of the United States ; and that such being also her desire, and in consideration of ten dollars ($10), to her in hand paid by the Second Presbyterian church, etc., she grants, and so forth, unto the said Second Presbyterian church, all and singular, the lots and lands on Charles-

ton Neck, marked on the plat thereto annexed by the letters A, C, and D, said lot marked A being now under lease to C. F. Bredenburg for the term of ten years, to have and to hold, etc., unto the said Second Presbyterian church, its successors and assigns, forever, *in trust*, to hold and enjoy the said premises, collect the rents and pay over two-thirds thereof to the said Maria C. Moore during her natural life, and retaining one-third to the session, consisting of the ministers and the elders, from time to time being of said church, to be by them applied as they may deem most advantageous and advisable to promote the cause of foreign missions, and so forth ; and from and after the death of the said Maria C. Moore, *in trust* to said church, to collect the rents and pay the same over to the said session of the said church to be by them applied as they may deem best for the promotion of the cause of foreign missions, and so forth ; the said session to pay her funeral expenses ; and further, in trust, that is to say, whenever it may be thought advisable, it shall be lawful to and for the Second Presbyterian church, of the city and suburbs of Charleston, *by and with the consent and advice of their session, from time to time being, to sell and dispose of the said premises,* or any part thereof, on safe and equitable terms, and to execute and deliver titles for the same, or any part thereof, to the purchaser or purchasers, freed and discharged from all trusts ; the proceeds thereof, and of every part thereof, and all and every reinvestment of the same from time to time, and at all times hereafter, being and remaining subject to the same trusts and uses, and to the same power of sale and reinvestment by and with the advice and consent of the said session from time to time being.

"On the 10th of May, 1866, the Second Presbyterian church, of the city and suburbs of Charleston, by warranty deed, conveyed the property to Luder Bredenburg, the deed being duly recorded in the register of mesne conveyance office for Charleston County, in book T, 14, No. 5, page 184. Maria C. Moore has departed this life. Luder Bredenburg departed this life in 1868, leaving in full force and unrevoked his last will and testament, bearing date 4th of May, 1868, which substantially provides as follows :

" *Will of Luder Bredenburg.*—1868. Will Book 'N,' page 544, dated 4th of May, 1868, authorizes debts to be paid, and

then proceeds as follows : 'I give, devise, bequeath all my property, real and personal, to my executor and executrix hereinafter named, in trust to and for the following purposes, that is to say, to apply and pay over the whole income thereof, after deducting necessary expenses, to my dear wife, Henrietta Bredenburg, for and during the term of her natural life, if she shall so long remain unmarried and my widow, and upon her death or marriage, then I give and bequeath the whole of my said property to my son, Ed. Henry Bredenburg, in fee, if he should be then alive, or to his issue should he be then dead, but in case my said wife should marry again, then, on the happening of that event, I will and direct my executor and executrix to pay over one-third of my said estate to her and to hold the balance for the support and maintenance of my said son until he is of the age of twenty-one years, and on his arrival at that age the balance of my estate I give to him and his heirs forever ; but should my said son die before arriving at the age of twenty-one years and before his mother, he having no issue, then I give, devise, and bequeath the part already given and devised to him to be divided equally between my two brothers, J. J. Bredenburg and J. P. Bredenburg, if they should be then alive, or between their issue then living, the issue to represent the parent's share,' and proceeds, 'I nominate, constitute, and appoint my beloved wife, Henrietta Bredenburg, and my brother, J. P. Bredenburg, executrix and executor of this my last will, and I do hereby authorize and empower them, or such of them as shall qualify hereon, to sell and dispose of my said estate, or any part thereof, either real or personal, for the purpose of carrying out this my will, or to change the investment when in his opinion or their opinion necessary.'

"J. P. Bredenburg deceased on February 22, 1870, intestate. S. J. Bredenburg qualified as his administrator ; and deceased leaves as his heirs and distributees his only surviving brother, J. J. Bredenburg, and the son of a deceased brother, Edward Henry Bredenburg. Mrs. Henrietta Bredenburg is still alive. Edward Henry Bredenburg, the son of Luder, died when four years old. J. P. Bredenburg died unmarried and without issue, and J. J. Bredenburg is still alive.

"The defendant, Isaac V. Bardin, objects to the title : 1st.

Because there is no consent of the 'session' of the Second Presbyterian church endorsed upon the deed to Luder Bredenburg. 2nd. Because the power of sale given by the will does not extend to a surviving executor, the will of Luder Bredenburg having taken effect prior to the passage of the act of 1876, now known as section 1971 of the General Statutes. The question now submitted for the consideration of the court is, whether the title tendered by the plaintiff is such a marketable title as the defendant is bound to accept. If so, the court will decree specific performance of the contract of sale; if answered in the negative, the defendant will be released from the contract."

The case came on to be heard by his honor, Judge Witherspoon, who held that "the consent" of the session of the church is presumed from lapse of time; and that the conveyance to Luder Bredenburg put in him a marketable title to the lands in question; that the act of 1876, now known as section 1971 (General Statutes), is retroactive, and a surviving executor has the right to sell under the power given by a will, even though the same took effect prior to the passage of said act of 1876. "It is ordered, that the defendant, Isaac V. Bardin, do specifically perform his contract of purchase with the plaintiff, Henrietta Bredenburg, surviving executrix of Luder Bredenburg, deceased, and that upon the tender to him of the conveyance from the plaintiff, under and by virtue of the power contained in the will of Luder Bredenburg, he do accept such conveyance, pay the cash portion of the purchase money, and execute and deliver the bond and mortgage, as provided by the terms of sale."

From this decree Isaac V. Bardin appeals to this court upon the following grounds: (1) Because his honor erred in holding that the consent of "the session" of the Second Presbyterian church is presumed from lapse of time. (2) Because his honor erred in holding that the conveyance to Luder Bredenburg put in him a marketable title to the land in question. (3) Because his honor erred in holding that the act of 1876, now known as section 1971 of the General Statutes of South Carolina, is retroactive, and a surviving executor has the right to sell under the power given by a will, even though the same took effect prior to the passage of the said act of 1876.

The Second Presbyterian church had the right to sell the property "with the consent and advice of their session, from time to time being." On May 10, 1866, the church conveyed the premises to Luder Bredenburg; the deed was duly recorded, and 25 years thereafter objection is made by a stranger, who happened to purchase the land, that the "session" of the church never consented to such conveyance, and on that account the title is defective. There is nothing in the deed requiring the consent of the session to be given in any particular manner. There is no evidence that the consent was not given. The session makes no objection, and we agree with the Circuit Judge, that the consent of the session is presumed from lapse of time. See *Willingham* v. *Chick*, 14 S. C., 93.

It is still further objected, that even if Luder Bredenburg had a good marketable title, his widow, Henrietta, his only surviving executrix, has not the right to sell and convey the land, under the power given by his will, for the reason, as alleged, that the only authority for a surviving executor to convey lands of the testator is derived from the act of 1876 (now section 1971, General Statutes), which was not passed until after the will of Luder Bredenburg was admitted to probate in 1868; and that the act of 1876 is not retroactive in character. It is in these words: "Whenever any person *has* directed, or *shall* direct, by his or her last will and testament duly executed, &c., that his or her land shall be sold for the payment of his or her debts, or for the purpose of distributing the money which may arise from the sale thereof among his or her legatees, or for any other purpose whatsoever, if either such power of sale be expressly given to the executor or executors of said will, or any person is named in said will to execute the said power, it may and shall be lawful to and for the executors, or the majority of such executors, who shall qualify on the said will, or the survivor or survivors, to sell and convey the said lands," &c.

We think the mere reading of the Act conclusively shows that it was intended to apply to wills which had already been made as well as to those which should be made in the future. "A retrospective statute, affecting and changing vested rights, is very generally considered in this country as founded on unconstitutional

principles, and consequently inoperative and void. But this doctrine is not understood to apply to remedial statutes, which may be of a retrospective nature, provided they do not impair contracts or disturb absolute vested rights already existing, and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations. Such statutes have been held valid when clearly just and reasonable, and conducive to the general welfare," &c. 1 Kent Com., 455.

But if the act had never been passed, we think that Mrs. Bredenburg, as sole qualified executrix, would have had the power to sell and convey the land. The power was coupled with a trust and survived. "If it be a power coupled with a trust, it survives, and may be executed by one executor where the others die or renounce the office. The test of such a power being coupled with a trust is, that a third party has such an interest as will enable him to call on the executors to execute the trust. It cannot be doubted that the power in this case was one coupled with a trust; and to be. executed by the executors *virtute officii*, and necessary to be put into exercise in order to execute the provisions of the will. Hence it was properly executed by the only person qualified as executor," &c. See *Smith v. Winn*, 27 S. C., 598, and *Reeves v. Tappan*, 21 *Id.*, 9. In this case the will of the testator provided as follows: "I give, devise, and bequeath all my property, real and personal, to my executor and executrix, hereinafter named, in trust. * * * But in case my said wife should marry again, then, on the happening of that event, I will and direct my executor and executrix to pay over one-third of said estate to her, and to hold the balance for the support and maintenance of my said son until he is of the age of twenty-one years," &c. There can be no doubt whatever that the power to sell given to the executors was a power coupled with a trust, and that the power survived to Henrietta Bredenburg as sole surviving executrix.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.