DANIELS v. FLORIDA CENTRAL AND PENINSULAR R. R. CO.

1. NONSUIT properly refused here, because there was testimony tending to show that plaintiff purchased a round-trip ticket, and none tending to show other conditions on the ticket.

2. BURDEN OF PROOF—RAILROAD—PASSENGER.—Where a railroad company, as a defense to an action by passenger for wrongful ejection, sets up failure of passenger to comply with conditions on his ticket, the burden of proof is on it to show the conditions of the ticket.

3. RAILROADS—PASSENGERS—TICKETS—PRESUMPTIONS.—It will be conclusively presumed that a person of ordinary intelligence who signs a railroad excursion ticket knew and assented to all of its conditions, although the fact be that it was not read before or after signing, or its conditions not called to his attention.

4. CONTRACTS—CHARGE.—WHERE FRAUD OR MISREPRESENTATION is not alleged or proved, it is not error for Judge, in giving general definition of contracts, to instruct jury that "there is no binding con-

1—62

tract if there is fraud or misrepresentation, because that vitiates everything;" but under such conditions it is error to instruct the jury that if one party was misled by the misrepresentations of the other, that he is not bound by the contract.

5. DAMAGES—PASSENGERS.—RAILROAD COMPANY is not liable in damages for rude language used by its conductor to a passenger, unless it be abusive.

6. JURY—TICKET.—Under facts here, the question of what kind of ticket plaintiff had on the occasion referred to, was properly submitted to the jury.

7. NEW TRIAL will be granted, where the jury has been erroneously instructed as to the law, without inquiry as to what other ground they may have based their verdict on, as that is merely conjecture.

Before TOWNSEND, J., Richland, fall term, 1900. Reversed.

Action by Isabella Daniels, by her guardian *ad litem,* David Cooper, against Florida Central and Peninsular R. R. Co., for damages for ejecting her from a passenger train. From judgment for plaintiff, defendant appeals. So much of the charge as pertains to the questions raised on appeal is as follows:

"I will say to you, however, gentlemen, before I take up the requests to charge, that it takes two to make a contract; that is, there must be two contracting parties; there may be more than two contracting parties, but there must be one on one side and one on the other; and there is no contract unless and until their minds meet; they must come together on some proposition and on the proposition about which the contract is to be made. The minds must meet; they must agree, must come together and discuss the matter; a week, a day, no matter how long, discuss the matter about which they shall contract. There will be no contract until the minds meet, come together, and there will be no binding contract if there is misrepresentation or fraud, because that vitiates everything. But it is for you to say whether there was a contract between these parties, plaintiff and the railroad company, by the agent of the railroad or otherwise.

You must say whether there was a contract; and if you find there was a contract, then you must say what the contract was.  That is a matter of fact for you.  I have nothing to say about that.  You must say whether the contention of the plaintiff is correct, whether it was simply a contract to carry the plaintiff to Savannah and bring her back, or whether it was a contract contended for by defendant, if there was a contract, that it was a contract with limitations; special contract with certain limitations.  Whether you find the one contract or the other, it is for you to find whether the contract such as you find was violated by either party. That is all a matter of fact for you.  I have nothing to do with that at all.  I charge you further, if you were to find that there was a special contract with limitations in it, then I charge you that the plaintiff was bound by the limitations, if she knew it, or should have known it.  I will touch upon that point 'should have known it' again.  If she knew, or should have known, of the limitations, she should be bound by them; and if she failed to comply with them, the con- ductor, the agent of the road, usually called conductor, I believe, would have the right to put her off the train; but before doing so, he should examine the ticket to see that she had, to satisfy himself, to see that she had complied with the requisites of the tickets.  The burden of proof is on the railroad to show that these special limitations were in the contract.

"I will take up the requests to charge.  I do not consider that the law covers a great deal of ground in the case.  I will take first the requests of the defendant, as that is the order in which the arguments were made, and the plaintiff's last.

" '1. That when a person who intends traveling on a railroad train and purchases a round trip ticket at a reduced rate of fare, and signs the contract printed upon its face, is bound by all of its reasonable provisions, whether she had actually read the same or not, and she is presumed to know the same.'  I charge you that, under the case of Bethea *v.*

R. R., and furthermore, on the general principle that a person who can read should read the contract he signs.

" '2. That a condition in a round trip railroad ticket, sold at a reduced rate of fare, that the purchaser will identify himself to the satisfaction of the agent of the company, at the point of destination, and sign the same and have it stamped, is a reasonable condition, and the purchaser of such a ticket is not entitled to return on such a ticket until it is so signed and stamped.' I charge you that, while it sounds like charging upon the facts of the case, reasonableness is a matter generally left with the jury. Our Supreme Court has said that in the same words that stipulation is reasonable, at least, it is not unreasonable. I charge you that stipulation is reasonable.

" '3. That it is the right of a railroad company to expel a passenger who is found upon one of its trains who fails to present a valid ticket for her passage, or to pay her fare.' I charge you that is the law, as I understand it. If the ticket is wrong, the conductor must go according to the rules of the company, which has to carry the public and, at certain times, has a great duty imposed upon it; and if he has to put off a passenger because the ticket is wrong, the conductor must do that; the railroad may be liable for issuing the wrong ticket, but not for putting him off.

" '4. That a railroad company is not liable for rude language used by one of its conductors to a passenger lawfully requiring such a passenger to get off of its train.' That is a very general proposition to charge, that the company is not liable for rude language—depends upon the degree of rudeness. I would say the company is not liable for strict, business language—firm, business-like talk—but if the rudeness goes to such extent as to be abusive, I would not charge you that the railroad is not liable, where everybody is presumed to be on the train correctly until shown to the contrary; so decided by our Supreme Court. I will not charge you that proposition as it stands; but for ordinary strict, business language, I would say the company is not

liable; but if it should go to an unreasonable extent so as to become abusive, I would say that the company is liable for it.

"The plaintiff requests me to charge you as follows:

" '1. A person upon a railroad train is presumed to be a passenger and to be rightfully there, and such a person could not be considered a trespasser until she had refused to exhibit her ticket or pay the fare demanded.'   I charge you that.

" '2. A conductor of a railroad train has no right to eject a passenger until the passenger has refused to exhibit her ticket or pay the fare demanded; and if he does, the railroad company is liable in damages to the person ejected.'   I charge you that.

" '3. Where a railroad company issues tickets with special conditions, the burden of proof is upon it to show what were those special conditions, where they are relied upon to relieve the railroad from liability.'   I charge you that; I have already charged you that in substance.

" '4. Even if you find that the plaintiff's ticket was required to be signed and stamped in Savannah, yet if the plaintiff was misled as to its requirements by the representations and conduct of the agent of the company who sold the ticket, then she would not be bound by those requirements, she being ignorant thereof.'   I charge you that.   I have already charged you that when the minds of two persons meet, there is a contract unless there is fraud or misrepresentation, then the party who is deceived is not bound by the contract.

" '5. I charge you that it is for you to say what the contract was.   I further charge you that it takes at least two parties to make a contract; and that to constitute a contract the two parties must concurrently assent to the same thing at the same instant of time.'   I charge you that.

"You are to be governed by the preponderance of the evidence in reaching your verdict.   I don't know that there is anything else to charge you on.

"Juror Brennen: Have we the right to consider the person being an infant, as to whether or not it would not be an *ex*

*parte* contract on the part of the railroad in making an infant sign a contract of that kind; would it be binding?

"The Court: If counsel wish to say anything about it, I will hear them.

"Mr. Lyles: I do not see the competence of the question; at the same time, I do not think there is any doubt about it that an infant may purchase a railroad ticket, and if she purchase a railroad ticket with qualifications in it, and if they are reasonable and are binding upon the public generally, why she is bound by it. In other words, it would be a fraud, if an infant were to purchase a railroad ticket with special provisions which were ordinarily binding in law, for $1.50, when the regular fare would be $9.90. Now, an infant is not bound by an ordinary contract except for necessaries, but she cannot take advantage of a contract she has entered into without bearing the burden of it. In this case they are suing upon a contract, and if they take it, they take it with the burden; and, moreover, it is shown that the ticket was purchased by the aunt.

"Mr. Brennen: Mr. Lyles argued that this contract had been violated by the person who had purchased this ticket because she had not gone to a certain point and got it stamped; and the question would arise, or might arise, whether or not it was an *ex parte* contract on the part of the railroad.

"Mr. Thomas: I do not think it needs any discussion.

"The Court: In the case of Roundtree *v.* Moore, where an infant had obtained supplies for the year, used them in the crop and would not pay, Moore levied on the crop; and he took the ground he was an infant and not liable for the contract which he had made. I decided he was liable because he had made the contract; he had the benefit of it and was bound same as anybody else. The Supreme Court confirmed it. So that my view of the matter is generally that there are some contracts that infants are not liable for, and only liable as a general thing for necessaries, raiment, food, something of that kind; but where infants go and undertake

to act for themselves, start out in life, act for themselves and are allowed to do so, and make a contract with others and get the benefit of the contract, they are bound by it as much as anybody else. That is all I have to say to you, gentlemen; if you have any confusion, come out and ask for instruction."

From judgment for plaintiff, defendant appeals.

*Messrs. C. J. C. Hutson* and *Wm. H. Lyles,* for appellant. The latter cites: *Plaintiff must prove his contract and that he complied with its conditions:* Hutchison on Carriers, secs. 568, 580a, 580b; 81 Mich., 364; Fetter on Carriers, secs. 284, 289; 127 U. S., 390; 132 U. S., 146; 26 S. C., 91; 30 N. E. R., 353; 34 N. E. R., 1111. *It is not necessary that purchaser's attention be called to conditions of ticket:* 26 S. C., 91; 49 L. R. A., 424. *Error to leave it to jury under allegations and proof to say whether contract was binding on plaintiff because of fraud or misrepresentation:* 9 Ency. P. & P., 684; Rapalge & Macks Digest, vol. 7, 1064, 1065. *Where a conductor is lawfully requiring a passenger to get off the train, the company is not liable for his language:* 1 Fetter on Carriers, sec. 336; 2 *Ibid.,* sec. 553; 11 S. E. R., 525.

*Messrs. Jno. P. Thomas, jr.,* and *P. H. Nelson,* contra. The former cites: *If evidence of defendant cured lack of evidence of plaintiff, order refusing nonsuit will not be set aside:* 51 S. C., 153; 44 S. C., 554. *Competent to prove terms of contract between carrier and passenger by parol:* 25 Ency., 1075; 1 Fetter on Carriers, p. 711. *Where proof is that conductor ejects passenger without demanding ticket or fare, nonsuit is improper:* 68 Tex., 617; 11 Nev., 350; 25 Ency., 1081; Rev. Stat., 1732; 38 S. C., 26. *Burden of proof is on defendant to show limitations in contract:* 56 S. C., 153. *New trial will not be granted because Judge charged abstract proposition of law not applicable to the*

*case:* 22 S. C., 477.    *R. R. Co. is liable for abusive language of its conductor:* 5 Ency., 2 ed., 550; 21 Mo. App., 399; 1 Fetter on Carriers, sec. 334.

September 25, 1901.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.    This was an action to recover damages for ejecting plaintiff from one of the trains of the defendant company.    The allegations of the complaint, so far as they affect the questions involved in this appeal, may be stated substantially as follows: That on the 6th of August, 1899, at the station of the defendant in the city of Columbia, the plaintiff purchased and paid for "a round trip ticket for her transportation from said city of Columbia to the city of Savannah, in the State of Georgia, and return," and boarded defendant's train at the said city of Columbia, and was thereupon carried to the said city of Savannah; that on the 7th of August, 1899, the said plaintiff boarded the defendant's train at Savannah for the purpose of returning "on her said ticket" to the city of Columbia; "that when said train had gotten only a few miles from Savannah, Ga., the defendant's agent in charge of the train caused the same to stop, and peremptorily ordered plaintiff, together with certain other passengers, to leave the train, without having demanded of plaintiff her said ticket, or without having seen the same, or without demanding of her fare for her transportation from the said city of Savannah to the said city of Columbia; and thereupon this plaintiff offered her said ticket to the said agent of the defendant, but he refused to accept the same;" that the defendant, at a point between stations about four and a half miles from Savannah, where there was no shelter or convenience for passengers, "and with intent to degrade, humiliate and wound the plaintiff in her person and feelings, caused and forced her to be ejected from the said train, wilfully and unlawfully, in a high-handed manner, and without regard to the rights of the plaintiff, and with a design to injure, humiliate,

degrade and oppress her in the exercise of her lawful rights;" and that the plaintiff was compelled to walk back in the night-time to Savannah, where she was detained until the next day, and was compelled to purchase a ticket from defendant, for which she paid the sum of $4.95, for her transportation to Columbia, in order to return to her home in said city. The defendant answered, denying every allegation in the complaint, material to the points raised by this appeal. The case came on for trial before his Honor, Judge Townsend, and a jury, and at the close of the testimony for the plaintiff a motion for a nonsuit was made, which was refused without assigning any reasons, and the case went to the jury, after hearing the testimony adduced by defendant, and that in reply by plaintiff; and after hearing the argument of counsel, and the charge of the Circuit Judge, the jury rendered a verdict for the plaintiff in the sum of $400. The defendant thereupon moved for a new trial on the minutes, which was refused without assigning any reasons; and from the judgment entered upon the verdict, the defendant appealed, basing its appeal upon fourteen exceptions, which are set out in the record, but which need not be here stated specifically, as we propose to consider the points made by these exceptions under the several heads presented in the argument of counsel for appellant, omitting the first head, which being based upon the first exception, which was abandoned on the argument here, need not be further noticed. Inasmuch as the exceptions are based mainly upon alleged errors in the charge of the Circuit Judge, it will be necessary for the Reporter to incorporate in his report of the case a copy of the charge, as set out in the "Case."

The first point made by counsel for appellant in his printed argument having been abandoned, as above stated, we proceed to consider his second point, which is thus stated in his printed argument: "that the action was based upon a special contract alleged in the complaint, (and) that there was no evidence on the part of the plaintiff to show that, by the terms of that contract, she was

entitled to return passage from the city of Savannah to the city of Columbia." From this counsel argues, first, that there was error in refusing the motion for a nonsuit. The conclusive answer is that it is a mistake to say that there was no evidence on the part of the plaintiff to show that, by the terms of that special contract, she was entitled to return passage from the city of Savannah to the city of Columbia. The only testimony before the Court at the time the motion for a nonsuit was made and refused was that of the plaintiff herself; and she testified that the regular fare from Columbia to Savannah was $4.95, but that on the occasion in question she bought a round-trip ticket for $1.50, called a Saturday night ticket, and that she had lost her ticket after she was ejected from the train. This testimony, to say the least of it, certainly afforded *some* evidence that the ticket which she bought entitled her to return passage from Savannah, as she alleges in the complaint; for, as every one knows, a "round-trip" ticket entitles the holder to return passage. It is clear, therefore, that there was no error in refusing the motion for a nonsuit upon the ground stated. Next, it is contended that there was error in refusing the motion for a nonsuit, because the plaintiff had failed to prove the terms of the special contract alleged in the complaint. It must be remembered that at the time the motion for a nonsuit was made, it did not appear that the special contract contained any other condition than that under it, the holder was entitled to return passage, and as to that condition there certainly was evidence. The ticket itself had been lost and, therefore, could not be offered in evidence; and whether it contained any other terms or conditions, was a matter of conjecture purely, for the plaintiff testified that she had never read the ticket and, of course, could not say what it contained. It is true that she signed the ticket at the instance of the agent who sold her the ticket, but she says she did not read it and did not know what was in it. There was, therefore, no error in refusing the nonsuit on this ground.

It is next contended that the Circuit Judge erred in his charge to the jury, with respect to the burden of proof, as to the terms and conditions mentioned in the ticket such as that the plaintiff is said to have purchased in this instance. We see no error in the instructions given to the jury upon this point. Indeed, the defendant did offer testimony tending to show that the ticket bought by the plaintiff did contain a condition that if it was not signed by the plaintiff in Savannah and stamped by the railroad agent at that point, it would not be good for the return passage to Columbia—and that was the real ground of defense. It is true that the ticket held by the plaintiff having been lost, the primary evidence of what were its conditions, could not be offered; but the secondary testimony afforded by a sample copy of the ticket and the testimony of Mr. Seay, the ticket agent at Columbia, which was not controverted, tended to show that plaintiff's ticket contained such a condition; and the testimony of the conductor, which, however, was contradicted by the plaintiff, afforded direct evidence that the plaintiff's ticket did contain such a condition, and that it had not been complied with. Exceptions two, three, seven, nine, thirteen and fourteen, raising this point, are overruled.

Appellant next contends that there was error in the instructions given to the jury in regard to what is necessary to constitute a contract, when he said to the jury: "It takes two to make a contract; that is, there must be two contracting parties * * * and there is no contract unless and until their minds meet. They must come together on some proposition, and on the proposition about which the contract is to be made. Their minds must meet, they must agree; must come together and discuss the matter, a week, a day, no matter how long, discuss the matter about which they shall contract"—the error alleged in the fourth exception being that the Judge thereby indicated to the jury that a contract could not be made by the mere purchase and signing of a special round-trip excursion ticket without a

discussion between the purchaser and the agent of the railroad company; and in charging as complained of in the twelfth exception, as follows: "I charge you that it is for you to say what the contract was. I further charge you that it takes at least two parties to make a contract, and that to constitute a contract, the two parties must concurrently assent to the same thing at the same time"—the error indicated by this exception being that the language used by the Judge was well calculated to make the jury believe that even although the plaintiff had signed the contract embodied in the ticket, she would not be bound by the terms thereof, if her mind had not actually acted upon and assented to such terms. This, we think, was error, especially under the undisputed testimony in this case that the plaintiff had bought the ticket at the office in Columbia, knowing it to be a round-trip ticket, and had there signed the same, and the fact testified to by plaintiff that she had not read and did not know that one of the conditions embraced in such a ticket was that it would not be good for a return passage unless she also signed it in the presence of the agent at Savannah, and had it stamped by such agent, cannot affect the question; for while it may be true that the purchase was somewhat hurried, yet she had abundant opportunity of reading it, and thus learning the conditions which it contained before she undertook to return on that ticket. For in *Bethea* v. *Railroad Company*, 26 S. C., 91 (a case very similar to the case under consideration), in disposing of an exception making the point that the plaintiff was not bound by any of the special (small type) conditions on the ticket, "for the reason that they were not brought to his attention before he signed his name to them and paid his money, and because he had no knowledge of them," the Court used the following language: "We have little doubt that the transaction of purchasing the ticket at Florence was somewhat hurried, but the plaintiff signed the contract, and in doing so certainly made himself a party to all the conditions therein stated. It would tend to disturb the force of all such contracts, if

one in possession of ordinary capacity and intelligence were allowed to sign a contract and act under it in the enjoyment of all its advantages, and then repudiate it upon the ground that its terms were not brought to his attention. In the absence of all fraud, misrepresentation or mistake, it must be presumed that he read the contract and assented to its conditions." To the same effect see *Boylan* v. *Railroad Company*, 132 U. S., 146—a case quite similar to this— where Mr. Justice Gray, in delivering the opinion of the Court, used this language: "The only contract between the parties was an express one, signed by the plaintiff himself as well as by the defendant's agent at Chicago, and con-tained in a ticket for a passage to Hot Springs and back. The plaintiff having assented to that contract by accepting and signing it, was bound by the conditions expressed in it, whether he did or did not read them or know what they were." In view of these authoritative decisions, it is clear that there was error in giving to the jury the instructions excepted to in these two exceptions, four and twelve; and that these exceptions must be sustained, as they were well calculated to induce the jury to believe that if the plaintiff had not read and did not know the terms of the contract evidenced by the ticket (as the plaintiff testified), she would not be bound by the condition stated in the contract, evi-denced by the ticket, that it would not be good for return passage unless it was signed by plaintiff and stamped by the agent in Savannah. The plaintiff, though a colored girl of about the age of eighteen years, was able to read and write, as she testified, and did actually read while on the stand this notice printed on the sample ticket offered in evidence, which Mr. Seay says was the only form used on that occasion (referring to the time when the plaintiff bought her ticket), in bold-faced clear type, easily legible, which read as fol-lows: "To Purchaser. Read this contract, and take notice that the return part of this ticket must be stamped and your signature witnessed in the manner prescribed, before it will be honored for passage." In the absence of any evidence

to the contrary and especially in the face of the testimony of the plaintiff herself that she could read and write, it must be assumed that she was a person of ordinary intelligence, and when she bought and signed a round-trip ticket from Columbia to Savannah at a price less than one-sixth of the regular fare (a circumstance which of itself was well calculated to invite her attention to the terms and conditions of such ticket), which distinctly informed her of the conditions upon which she could use it for return passage, and also contained a notice especially calling her attention to the terms upon which alone she could use it for her return passage, it must be conclusively presumed (as the cases cited practically hold) as matter of law that she knew the terms of the contract and was bound thereby, even though the actual fact may be (if it be a fact) that she did not discuss the matter "with the agent who sold her the ticket, or that her mind had not actually acted upon it and assented to it," which could not very well be the case if she did not read and did not know what were the terms contained in the contract evidenced by the ticket.

We next proceed to consider the fourth ground taken in the argument for appellant, which is based upon the language quoted from the Judge's charge in exceptions five, ten and eleven, in reference to fraud and misrepresentation, the error imputed being that there being no allegation of fraud or misrepresentation in the complaint, and no testimony to that effect, it was erroneous and misleading to the jury to introduce the element of fraud and misrepresentation into the inquiry to be made by the jury. It is true that there is no allegation in the complaint of any fraud or misrepresentation, and no testimony upon that subject, and if the jury had been instructed to inquire whether there was any fraud or misrepresentation, that might have been erroneous. The language quoted from the charge in the fifth and eleventh exceptions is only a portion of a sentence in which the Judge was instructing the jury as to what would constitute a contract generally; and while it

may not have been necessary, we do not think it was error of law to include in his general instruction the matter of fraud or misrepresentation, as the jury were not instructed to inquire whether there had been any fraud or misrepresentation in this case. Those two exceptions must, therefore, be overruled. It is different, however, with the tenth exception, for there the jury were instructed, at the request of the plaintiff, as follows: "Even if you find that the plaintiff's ticket was required to be signed and stamped in Savannah, yet if the plaintiff was misled as to its requirements by the representations and conduct of the agent of the company who sold that ticket, then she would not be bound by its requirements, she being ignorant thereof." This was a plain indication to the jury that they must inquire into a fact which was not alleged in the complaint and of which there was not the slightest testimony. The plaintiff was the only witness who testified as to what occurred when she bought her ticket from the agent in Columbia, and she does not pretend to say that said agent made any representations whatever to her in regard to the necessity of signing and stamping the ticket in Savannah. All that he did or said to her was to push the ticket to her and tell her to sign it, which she did as required by the terms of the ticket. If, therefore, the jury had undertaken to inquire whether the plaintiff was misled as to the requirements of the ticket by the representations of the agent of the company who sold the ticket, as they were required to do by the charge, they would have had to inquire as to a fact which was not only not alleged in the complaint, but of which there was no testimony whatever; and their finding as to such fact would be based purely upon conjecture. This was error, and exception ten must, therefore, be sustained.

The next point made is based upon exception eight, in which complaint is made of error in modifying defendant's request to charge, "That a railroad company is not liable for rude language used by one of its conductors to a passenger, lawfully requiring such passenger to get

off its train." We do not see any error in the modi-
fication of this request, which appears in the Judge's charge,
for he practically instructed the jury that the company
would not be liable for any language used by the conductor,
unless it was abusive, and there was no pretense that any
such language was used; for, according to the plaintiff's
own testimony, the language used was: "Get in there, get
your things and get out of here, got no time to waste."
While it is quite probable that the conductor spoke in a
quick, peremptory tone, there was no element of abuse in
what he said to her when she went to the door of the car,
seeing the people in front of her getting off. This excep-
tion is overruled.

The last point made by counsel for appellant is based upon
exception six, in which error is imputed to the Circuit Judge
in charging the jury as follows: "You must say whether
the contention of the plaintiff is correct; whether it
was simply a contract to carry the plaintiff to Savan-
nah and bring her back, or whether it was a [the?]
contract contended for by defendant; if it was a contract,
that it was a contract with limitations, special contract
with certain limitations"—the error indicated being that
there was no evidence save that offered by defendant, which
tended to prove a special contract with certain limitations.
It is true that the testimony on the part of the plaintiff
tended to show that the only condition contained in the
ticket which was actually known to the plaintiff was that
she was entitled to return passage; but the plaintiff having
lost her ticket, which it was claimed contained the other con-
dition that it would not be good for return passage unless
it was signed by the plaintiff and stamped by the agent in
Savannah, it was necessary to introduce secondary evidence
of the contents of the lost ticket—and this was done by the
defendant offering Mr. Seay as a witness, who testified that
he was the ticket agent of the defendant company in Co-
lumbia; and while he did not in person sell to the plaintiff
a ticket on the occasion in question, yet he could state as a

fact that the only form of ticket used for that occasion was the X-o form, of which he produced a sample, which was received in evidence and constitutes a part of the testimony set out in the "Case."    But, of course, it was for the jury to pass upon the force and effect of this testimony.    There is, therefore, no basis for the error imputed in the sixth exception, which is overruled.

If it should be said, as has been intimated in the argument of counsel for respondent, that the jury may have based their verdict upon the fact testified to by plaintiff, that the conductor did not examine her ticket and did not demand her fare before ejecting her from the train, the answer is obvious that such a position is based on conjecture purely; for neither this nor any other Court has the means of ascertaining the ground upon which the jury based their verdict, and will not and cannot enter into any such inquiry; and where, as in this case, there appears to be error in the instructions given to the jury, a new trial must be granted, especially where, as in this case, the facts testified to by the plaintiff upon which this conjecture rests are emphatically contradicted both by the conductor and by the witness, Jefferson Grant, who held the light for the conductor while he was examining the tickets of all those who were required to leave the train on the occasion in question.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.  ·