## 7868

### SMITH v. SOUTHERN RY.

1. CARRIER—PASSENGER—PUNITIVE DAMAGES.—A carrier is liable in punitive damages for requiring a passenger, whose husband presented at the initial office his own mileage book and the money for a ticket for himself and his wife, but at the suggestion of the agent paid for both tickets with mileage from his book, to pay her fare on threat of expulsion from the train.

2. IBID.—IBID.—CONDUCTOR.—It is the duty of the conductor to heed the reasonable explanations of a passenger about an irregular ticket or his right to passage.

Before WILSON, J., Edgefield, October, 1909.   Affirmed.

Action by Bessie D. Smith and H. A. Smith against the Southern Ry. Co.   Defendant appeals.

*Mr. N. G. Evans,* for appellant, cites: *Violation of the stipulations on the mileage contract avoids it:* 25 Pac. 733; 25 Ency. 1091; 15 Ill. App. 100; 53 Md. 201. *Purchasing ticket for the wife violates the contract:* 26 S. C. 96; 65 S. C. 103; 25 Ency. 804; 56 L. R. A. 741; 44 Am. St. R. 95. *Conductor properly lifted the mileage:* 14 L. R. A., N. S. 368. *There being no contradiction of acts of conductor Court should have held there was no wilfulness:* 133 N. Y. 622; 101 Mo. 93; 105 Mo. 399; 49 Am. & Eng. R. Cas. 390; 92 Ky. 345; 76 Mo. 80; 64 N. C. 235; 21 Fla. 700. *There can be no recovery for humiliation:* 14 L. R. A. 666. *There was no evidence of wantonness:* 62 S. C. 16; 73 S. C. 523; 61 S. C. 170; 64 S. C. 491; 35 S. C. 501; 57 S. C. 254; 69 S. C. 518. *Purchaser is bound by the stipulations in the mileage book:* Rap. & Mark. Dig. R. R. L. 1063; 26 S. C. 96.

*Messrs. Thurmond & Nicholson,* contra, cite: *Punitive damages may be awarded for ejecting a passenger:* 71 S. C. 446; 69 S. C. 330; 64 S. C. 514; 3 S. C. 580; 6 Cyc. 557;

100 Am. St. R. 261; 52 S. C. 323; 57 S. C. 418.  *Carrier is liable for mistakes and negligence of ticket agents:* 82 S. C. 173; 75 S. C. 116; 58 S. C. 145; 37 S. C. 194; 76 Am. St. R. 639.  *Verbal inaccuracy in a charge is not harmful:* 66 S. C. 35.  *Punitive damages are recoverable here:* 69 S. C. 115, 338; 70 S. C. 115, 418.

April 20, 1911.  The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.  This action was brought to recover damages for compelling plaintiff to pay her fare in cash, under threat of expulsion from one of defendant's trains, notwithstanding she presented to the conductor a ticket which had been issued and sold to her husband for her by one of defendant's ticket agents.

The ticket was obtained under the following circumstances: Plaintiff's husband had purchased one of defendant's interchangeable 1,000-mile individual mileage coupon books, upon the cover of which is printed a contract which was signed by the purchaser.  Besides many other stipulations, the contract provides that the book shall not be transferable, and that if it or any ticket issued in exchange for coupons from it shall be presented to any agent or conductor by any other person than the original purchaser, neither the book nor such ticket will be honored, but both will be forfeited and taken up and cancelled; and that no agent or employee of any line over which it reads has power to alter, modify or waive any of its conditions or stipulations.  In November, 1908, plaintiff and her husband, desiring to go from their home in Edgefield, S. C., to Augusta, Ga., Mr. Smith presented to defendant's ticket agent at Edgefield his mileage book and a five dollar bill, which plaintiff had given him to buy her ticket with, and asked the agent for two tickets to Augusta,—one for himself to be paid for with coupons from the book, and the other for his wife, the plaintiff, to be paid for out of the bill.  The agent said to him:

"Why don't you get both tickets out of your mileage book?" Mr. Smith replied: "I did not know you could do that." The agent said: "Of course, you can, and I will give you both tickets from your mileage book," and pushed the bill back to Mr. Smith, who said, if he could do that, he would rather pay mileage for the tickets than money. Accordingly, the agent detached the necessary number of coupons from the book to pay for both tickets, and issued them in the usual form. Their date, number and other marks showed that both had been issued in exchange for coupons from Mr. Smith's mileage book. The conductor on the road from Edgefield to Trenton honored them without question, punched them and returned them to Mr. Smith, by whom they were presented. At Trenton, the parties changed cars and took another line of defendant's road for Augusta. When the tickets were presented to the conductor on this line, he called for the mileage book, and, after comparing the tickets with it and seeing that both had been issued for coupons from it, he refused to honor them and told Mr. and Mrs. Smith that they would have to pay their fare in cash, or he would put them off the train. Mr. Smith explained to him the circumstances under which the tickets had been issued, and told him that he had offered to pay for his wife's ticket in money, but, at the suggestion of the agent, both tickets had been issued in exchange for coupons from his mileage book. But the conductor refused to accept the explanation, and demanded payment of their fares under threat of expulsion. Thereupon, Mr. Smith, to save his wife from being ejected from the train, got the money from her and paid her fare, but refused to pay his own. After some parleying, the conductor allowed Mr. Smith to ride on his ticket, but took up both tickets and the mileage book.

Under the instructions of the Court the jury found a verdict for plaintiff for $1,000.00, upon which judgment was entered.

The vital question in the case is whether Mrs. Smith was entitled to the rights of a passenger, under the circumstances stated. The contention of appellant is that, having signed the contract on the mileage book, in the absence of 'fraud, misrepresentation or mistake, Mr. Smith is conclusively presumed to have known and assented to all of its conditions and stipulations, and such is the law. *Bethea* v. *R. R.*, 26 S. C. 91, 15 S. E. 372; *Daniels* v. *R. R.*, 62 S. C. 1, 39 S. E. 762. Appellant also contends that it should be conclusively presumed that Mr. Smith knew the agent had no authority to alter, modify or waive any of the provisions of the contract, and, therefore, no authority to issue both tickets for coupons from his mileage book. The presumption that he knew the terms and stipulations of the contract, arising from the fact that he signed it, does not go to the extent of charging him with knowledge of the scope of the agent's authority. The contract does say that no agent shall have authority to alter, modify or waive any of its conditions or stipulations,—and that Mr. Smith knew,—but it does not follow that he knew that the company had not done so, when its agent, in effect, told him that it had. Common carriers have many rules and regulations for the conduct of their business, and many printed conditions and stipulations on passenger tickets issued by them which they can and do waive. On Mr. Smith's mileage book is a notice, under the head of "Instructions to agents and conductors;" that the coupons therefrom will be honored in exchange for tickets, which will be issued by defendant's agents "in accordance with special tariffs and circulars of instructions." How was he to know that the defendant had not issued a special "circular of instructions" to its agents, authorizing them to issue tickets for coupons from such mileage books to other persons than the original purchasers? Other railroad companies issue mileage books which are not only transferable, but are honored for passage

on the trains.    Therefore, the statement of the agent, that
both tickets could be issued for coupons from the book, was
not such an extraordinary or unusual thing that it should
necessarily have excited Mr. Smith's suspicion that he was
mistaken, or that he was acting beyond the scope of his
authority.    Suppose Mr. Smith had presented his book to
the agent and asked for a ticket, and the agent had told him
it was unnecessary to get a ticket, that his mileage would.
be accepted on the train, and he had, in good faith, relied
upon that statement, and had been ejected for failing to
have a ticket, would not the company be liable?    If not,
why not?    Of course, if Mr. Smith had been at fault, or
had by artifice or in any other way actively induced the
agent to issue both tickets from his book, in violation of the
terms of his contract, a different case would be presented.
But that he offered to carry out his contract and acted in
good faith in the matter, and that he relied upon the state-
ment of the agent, who was acting within the apparent scope
of his authority, are questions of fact, which, under the
instructions of the Court, the verdict establishes in favor of
the plaintiff.

It must not be forgotten that this is not an action upon
Mr. Smith's contract, either to enforce it or for damages
for its breach; but it is an action for a tort—for a wrong
done to plaintiff by defendant, through its agents; first, by
the agent at Edgefield, who, by falsely representing to Mr.
Smith that he could issue the tickets as he did, misled him
into a violation of the contract printed on his mileage book,
and caused him to make another contract with defendant;
and, second, by the conductor, who refused to recognize the
last contract which Mr. Smith was so induced to make.
The company can act only by agents.    It was present in
the person of its ticket agent when the contract was made
and the tickets issued.    It was present in the person of its
conductor when that contract was violated.    It will not be
heard to say that it manages its business in such a way that

it makes a contract through one of its agents which it may
violate through another with impunity to itself. There can
be no doubt that defendant is liable for the conduct of its
agents, acting within the apparent scope of their authority.
That is elementary law. It is a ticket agent's duty, and,
therefore, within the scope of his authority, to give pas-
sengers correct information with regard to their tickets,
and to provide them, upon payment of the fare, with proper
tickets. Therefore a passenger has a right to rely upon
information given him by the ticket agent. The traveling
public are not concerned with the management of the affairs
of railroad companies. They are not presumed to know
the rules and regulations adopted by the companies for the
guidance of their agents; nor are they presumed to know
the limitations of the authority of the agents of the com-
panies. The agent who sold the tickets in this case was
not examined; but, assuming that he merely made a mis-
take, the defendant cannot be heard to say that it is not
liable even for the error of its agent, which resulted in
injury to the plaintiff, because the act of its agent is its own
act. There is some conflict in the authorities, but the
weight of reason and the trend of judicial thought is in
favor of the doctrine that a passenger has the right to rely
upon the statements and assurances of a ticket agent as to
the sufficiency of the ticket furnished him as evidence of his
rights as a passenger, and that the carrier is liable for the
errors and omissions of such agents resulting in injury to
the passenger. *Childs* v. *Ry.,* 69 S. C. 327, 48 S. E. 252;
*Tolleson* v. *Ry.,* 88 S. C. 7, 70 S. E. R. 311; *Hufford* v.
*Grand Rapids etc. Co.,* 64 Mich. 631, 8 Am. St. Ry. 859;
*Head* v. *Ga. Pac. R. Co.,* 79 Ga. 358, 11 Am. St. R. 434;
*Hot Springs R. Co.* v. *Deloney,* 65 Ark. 177, 67 Am. St.
R. 913; *O'Rouke* v. *Citizens etc. Co.,* 103 Tenn. 124, 76
Am. St. R. 639; *Wilson* v. *Indianapolis St. Ry.,* 161 Ind.
153, 100 Am. St. R. 261; *Pausen* v. *Northern Pac. R. Co.,*
70 Fed. 585, 30 L. R. A. 730; *Wood* v. *Ry.,* 55 L. R. A.

536; *St. John* v. *Gulf etc. Ry. Co.* (Tex. Civ. App.), 35 S. W. 501.

The foregoing cases also hold that it is the duty of the conductor, in such circumstances, to heed the reasonable explanations of a passenger as to his ticket, or his right to ride, and our own decisions are to the same effect. *Myers* v. *Ry.*, 64 S. C. 514, 42 S. E. 598; *Chiles* v. *Ry.*, 69 S. C. 327, 48 S. E. 252; *Tant* v. *Ry.*, 87 S. C. 184; *Tolleson* v. *Ry.*, 88 S. C. 7, 70 S. E. R. 311. The rule requiring the conductor to heed the reasonable explanations of the passenger, instead of allowing him to demand the payment of fare, on pain of expulsion from the train, works less hardship, inconvenience and expense on the carrier than the opposite rule would on the passenger; for it is generally an easy matter for the conductor to ascertain whether the explanation of the passenger is true or false, because the stations along the railroads are nearly all connected by telephone or telegraph lines, which the agents of the companies may use with little trouble, and at little or no expense. It is a serious matter to expel a passenger from a train. It subjects him to humiliation, and it is calculated to wound the feelings of any self-respecting passenger. Therefore the law allows punitive damages for the wrongful expulsion of a passenger, and also for compelling him to pay money under threat of wrongful expulsion. *Myers* v. *Ry.*, *Chiles* v. *Ry.* and *Tolleson* v. *Ry.*, *supra*. Consequently the law is that a carrier must be allowed to resort to so harsh and extreme a measure only at the peril of being able to justify it.

The other questions raised by the exceptions are either involved in the foregoing considerations, or are of such a nature that they cannot control the decision and do not require extended notice.

Affirmed.