Gulf, Colorado & Santa Fe Railway Co. v. F. E. St. John.

No. 2272.

1. Railway Company—Ejection From Train—Excessive Damages—Remittitur.

Plaintiff, because of a failure of a ticket agent to officially stamp his ticket, was ejected from a train by the conductor, acting somewhat rudely but in good faith, and using no more force than was necessary; was thereby compelled to walk four miles to the nearest station; was delayed about twelve hours; reached his own station in the night, found no one there to meet him, and the next day had to make his way home, about 22 miles out in the country, the best way he could. Held, that a verdict for $500 damages was excessive, and the judgment would be affirmed only upon the entry by plaintiff of a remititur of $250.

2. Same—Round Trip Ticket—Liability for Negligence of Agent of Connecting Lines.

Defendant railway company sold plaintiff a round trip ticket good over its own and a connecting line, with printed conditions thereon stipulating that it acted only as agent of the connecting line, and was not liable beyond its own line, that no agent of any line had authority to modify the contract of the ticket in any respect, and that the ticket should not be good for return passage unless officially stamped by the agent of the connecting line at the terminal point. Plaintiff duly presented the ticket to such agent at the terminal point, who handed it back to him saying that it was all right, but neglected to officially stamp it, and when plaintiff reached defendant's line on the return trip, its conductor refused to honor the ticket because not stamped as required, and compelled plaintiff to leave the train. Held, that defendant was liable for the resultant damages, since the agent of the connecting line at the terminal point must be treated, as regards the matter of stamping the ticket to render it valid for return passage, as the agent of defendant the issuing line. TARLTON, Chief Justice, dissenting.

Appeal from Tarrant. Tried below before Hon. W. D. Harris.

*West & Smith, J. W. Terry,* and *Chas. K. Lee,* for appellant.— Under the terms of the contract the defendant's liability was expressly limited to its own line. There is no evidence to show that the agent of the Cotton Belt was in any respect the defendant's agent. If, under the evidence in this case, there could have been any liability for the plaintiff's ejection, it was a liability on the part of the connecting line for the wrongful act of its agent in not stamping and properly fixing up plaintiff's ticket so that it would entitle him to return passage, and to allow the plaintiff to recover in this case would be to make the defendant liable for the wrongful act of the agent of another company against which liability it had expressly contracted. Mosher v. Railway, 127 U. S., 390, 8 Sup. Ct. Rep., 1324; Trust Co. v. Railway, 65 Fed. Rep., 332; Railway v. Daniels, 29 S. W. Rep., 426.

*R. L. Carlock* and *T. J. Powell,* for appellee.—1. The pleadings and proof in the case showing that the plaintiff, who was the original purchaser of the ticket in question, had endeavored in good faith on his part to comply with the conditions of said ticket requiring identification and signature at Cairo, Ill., before being good for return passage, and the agent of the terminal railway at that place, who was for that pur-

pose the agent of appellant, having declined and refused to allow plaintiff to comply therewith, and thereby waived a fulfillment of said conditions, the appellant became and was by reason of the existence of such facts estopped from thereafter insisting on said conditions, and its action thereafter in ejecting plaintiff from its train, based upon a non-compliance with said conditions, was unlawful and authorized the plaintiff to recover his actual damages caused by its said unlawful conduct. Railway v. Martino, 2 Texas Civ. App., 634; Head v. Railway (Ga.), 7 S. E. Rep., 217; Railway v. Dennis, 4 Texas Civ. App., 90; Railway v. Mackie, 71 Texas, 494; Taylor v. Railway, 99 N. C., 185; Gregory v. Railway, 10 Neb., 250; Kent v. Railway, 4 Am. St. Rep., 509; Railway v. Halbrook, 33 S. W. Rep., 1028.

2. The evidence in the case waranted a recovery for plaintiff, and the damages allowed by the jury are not excessive, considering all the facts of the case. Railway v. Gilbert, 64 Texas, 536; Railway v. Wilkes, 68 Texas, 621; Railway v. Rather, 3 Texas Civ. App., 75; Railway v. Myrtle, 51 Ind., 573; Railway v. Fix, 88 Ind., 389; Railway v. Rogers, 10 Am. Rep., 103.

TARLTON, CHIEF JUSTICE.—On August 19, 1893, the appellee St. John was ejected by the conductor of appellant from one of its trains, for which he brought this suit to recover the sum of $5000 as actual and the further sum of $5000 as exemplary damages. He had a verdict and judgment for $500, and hence this appeal.

About the last of July, 1893, the plaintiff purchased of defendant's agent at Gainesville, Texas, a ticket from that point to Cairo, Illinois, and return. Attached to the ticket were coupons, which entitled the plaintiff to ride to Cairo over the line of the St. Louis & Southwestern Railway Co.

For the recited consideration of a reduced rate, the ticket, after providing that to be valid for one passage and return it should be officially stamped on the back thereof, further contained the following conditions:

"First.—In selling this ticket and checking baggage this company acts as agent, and is not responible beyond its own line.

"Fifth.—It is not good for return passage unless the original purchaser identifies him or herself as such to the authorized agent of the terminal line at destination point before commencement of return journey, and when this ticket is officially executed by such agent by being signed and dated in ink and stamped, it shall then be good only for return journey to original starting point if used within two days next following date of such execution; and further, provided such extreme return limit shall not extend beyond date punched under head of 'return trip.'

"Eight.—No agent or employe of any of the lines over which this ticket reads has power to modify the contract of this ticket in any particular."

On the back of the ticket a place is provided for the signature of the party and place for the stamp to be affixed by the agent and for the attestation of the latter, with the date and the following language: "In compliance with my contract with the Gulf, Colorado & Santa Fe Railway Company and the lines over which this ticket reads, I hereby subscribe my name as the original purchaser of this ticket."

On August 15, 1893, within the time limited by this ticket, appellee went to the Cotton Belt depot or the union depot at Cairo and presented his ticket to the agent, requesting the latter to restamp it, stating that he desired to sign his ticket. The latter took the ticket, examined it, and passed it back to the appellee without stamping it, with the statement that it was all right.

Relying upon the assurance of the agent that the ticket did not require the stamp or the signature or any evidence of identification, the plaintiff took passage on the Cotton Belt passenger train. He traveled on that line, reaching Fort Worth without molestation. On August 19 he got upon the train of the appellant at Fort Worth. What followed is thus described by him: "I boarded Santa Fe train Saturday for Gainesville, about 9 o'clock, August 19; I think schedule time for train to arrive at Gainesville was between 11 and 12 o'clock. I had baggage with me; a market basket, pretty good size, a few clothes, a little valise, some onion sets and one thing another—tricks that I was bringing home in market basket; I had nothing in valise but my clothes. I took seat in front part of smoker after I got on train; conductor came around taking up tickets somewhere between here and edge of town; I guess between here and river. I handed him my ticket, and he looked at it and says: 'This ticket ain't no count.' I asked him what was the matter with it, and he said it was a scalper's ticket. I told him I reckoned not; that I had bought it in good faith from agent at Gainesville; if it was a scalper's ticket that was first I knew about it, and I asked him if he was not mistaken. I thought at first he was jesting; he said it was no account, that it was a scalper's ticket. ''Taint no good; you will have to pay your way.' I told him I did not want to pay my way; I had done paid it once, had my ticket, and thought I ought to go on my ticket all right. So he would not listen to any reason at all. I told him I bought my ticket at Gainesville in good faith from agent and made whole trip on it, all but Fort Worth to Gainesville. He said it don't make no difference; it is a scalper's ticket; that they had been passing over the road and he was tired of it, and he wasn't going to let another man ride on a scalper's ticket. I told him I would not pay. I didn't have no money then; I had spent all I had. He said he would put me off if I didn't pay. He started to ring bell to put me off; got hold of my arm, gave me a jerk, and says: 'You will have to get off. You can't ride at all on that ticket.' He started to pull bell cord. He says: 'Just wait a minute and you can get off in a few minutes when we stop at crossing,' the crossing of this railroad this side of packing house. When we got to crossing train stopped and he told me to roll off. I got off and walked back to Fort

Worth, and stayed there until that night. I told him I was bound to go home that day to Gainesville; he didn't seem to pay much attention to what I said about that at all. I had no money at all; had spent last I had in Fort Worth. Conductor was very insolent. He took my ticket and says: 'On back of it it says the ticket ought to be stamped; by God, if you can't read, you had better get some man to read for you.' He said right smart about it. I told him I presented my ticket to agent at Cairo. He said my ticket was all right, and I had come clean through to here without any trouble. I did not get out of train voluntarily; would not have went out. He told me to roll off there; train stopped and I went right off. I walked back to Fort Worth and carried my baggage back. I judge it was about four miles back there, three or four. It seemed to me like it was eight or ten that day. It was pretty hot. I came back to a restaurant on Jones street, this side of union depot. I left my valise there, went to my uncle's and returned that night to Gainesville. The first passenger train on which I could get home after that was about 8 or 9 o'clock that night. I borrowed $2 from my uncle to go home on. My time that I was delayed was worth right smart to me. There was nobody at Gainesville to meet me when I got there. It was somewhere along about 11 or 12 o'clock. I stayed all night with a man I was acquainted with at Gainesville, and started home next morning. Got about four miles from town a wagon overtook me, and I rode about seven miles; then I walked from there home. I got home just about night; lived 22 miles from Gainesville. I could hardly express my feelings from way I was treated; I felt pretty bad to be treated in that manner when I had bought my ticket in good faith; it humiliated me to quite an extent."

On cross-examination the plaintiff further described his treatment in the car as follows: "He gave me a little jerk; caught me by the arm, like he was going to pull me out of the seat. He did not pull me out. Did not jerk me down. He grabbed hold of my coat and says: 'You will have to get out; I will have to put you off.'" But one passenger, a man, was on the train when the incident occurred.

It is but just to the appellant in this case to say that evidence introduced by it would have supported a finding that the appellee had not been ejected from its train. The verdict of the jury, however, approves the correctness of the appellee's statement, which is hence adopted by us in disposing of the appeal.

1. We are of opinon that the verdict is excessive, and that the damages assessed should be reduced to $250. This conclusion rests upon the authority of Railway v. Dennis, 4 Texas Civ. App., 90, in which the facts surrounding the expulsion of the passenger were substantially similar.

2. The most important question presented in appellant's brief is, whether at the time of his expulsion the plaintiff was rightfully on appellant's train; or whether, in other words, he was protected as a passenger by the ticket which he tendered the conductor. In this question

is involved the existence of the plaintiff's cause of action as here asserted; for if at the time of his expulsion there was no relation of passenger and carrier between the plaintiff and the defendant, the conductor properly ejected the former, if in so doing he used no more force than was necessary.

The majority of the court overrule the assignment urging this question, and hold that the appellee, under the facts detailed, was protected by the ticket. They say:

"It is apparent from the face of the ticket that in selling it to the passenger the Santa Fe road acted for itself and as agent for the Cotton Belt road, and that in pursuance of some sort of arrangement or understanding between the two companies, each was under obligation to the other to identify the purchaser and witness his signature at their respective ends of the line over which the ticket read. This is the natural interpretation which every purchaser would readily adopt, and any other would be contrary to common experience and understanding, and would operate a fraud upon the purchaser. He has the right to assume, when a printed ticket is offered him providing for his signature to be witnessed both at the initial and destination points, that the companies have arranged this matter between themselves for their mutual protection against a transfer of the ticket, and that when he presents himself to the designated agent at the destination point for identification as the original purchaser of the ticket for return passage, that agent will do what the printed language of the ticket assumes that he will do, to-wit: identify him and witness the signature. Nor do we understand it to be denied that such an arrangement did exist between the companies.

"In going from Gainesville to Cairo the original signing and stamping of the ticket was for the exclusive benefit of the Santa Fe till appellee reached the Cotton Belt line, to enable its conductors to comply with its rules, and thence to the end of the journey for the exclusive benefit of the latter company. In reference to the Cotton Belt part of the journey, the Santa Fe in witnessing appellee's signature and fixing the limit of the transit going acted exclusively as the agent for the Cotton Belt. Likewise, in reference to the Santa Fe part of the return journey, the act of the agent at Cairo in witnessing the signature as required in the ticket would have been for the exclusive benefit of appellant, and consequently the act of its agent. The true and reasonable view is that each company was to act for itself and the other company in doing what was deemed of mutual benefit to them in furnishing the conductors of their respective trains ready means for the identification of the original purchaser of the ticket, and that the failure of either to discharge this duty to the other should not be charged to appellee, who did all that he could, or was reasonably expected to do, to enable the conductors to keep the rules of their respective companies. Railway v. Dennis, 4 Texas Civ. App., 90.

"The very language printed on the back of the ticket for him to sign

indicates that he did not undertake to do more than sign his name before the proper agent, reading:

" 'In compliance with my contract with the Gulf, Colorado & Santa Fe Railway Company and lines over which this ticket reads, I hereby subscribe my name as the original purchaser of this ticket.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" 'Witness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" 'Agent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" 'Dated. . . . . . . . . . . . . . . . . . . . . . . . . . . . .189. . . .' "

"The first of the conditions relied on by appellant was to the effect that in selling it, appellant acted as agent beyond its own line, and also that it was not responsible beyond its own line. Suppose in thus acting as agent for the Cotton Belt, it had fixed a going limit too short, and the latter company's conductor had in pursuance of its rules ejected the passenger on that ground, it would have been no answer to an action against the Cotton Belt that the fault was originally appellant's, because that would have been to plead the dereliction of its own agent. So with the return trip. The failure and refusal of the agent at Cairo to do his duty in so far as his company was to act for appellant in stamping the ticket, rendered appellant liable. In a word, the vice of appellant's contention is, that it seeks to shelter itself from liability for the negligence of its special agent at Cairo, under the clause providing against responsibility 'beyond its own line.' As it cannot stipulate against its own negligence, neither can it against that of its agent.

"Besides, it is giving a strained and unwarranted construction to these very general terms, 'not responsible beyond its own line,' to apply them to matters affecting the original purchase or subsequent extension of the ticket itself. The ordinary passenger would not so understand them. They naturally suggest an effort to guard against the usual liabilities of a common carrier, which are not understood to include mere ticket fixing. Had something different or in addition been intended, it might quite easily have been expressed; and as said terms are here invoked to accomplish a result in the nature of a forfeiture, appellant should be denied a liberal construction to that end.

"But if no arrangements existed between the two companies, in pursuance of which the ticket was printed, in holding out to the passenger that the agent at Cairo would sign and stamp his ticket for return passage upon his duly presenting himself for identification, upon the faith of which the ticket was evidently purchased, appellant should be held estopped from claiming the benefits of so unreasonable a clause in the contract as the one which required him, as a condition precedent to his right to further use a ticket for which he had paid, to secure the signature and stamp of an agent of a company with which it had no such understanding. Evidently the purchaser of the ticket did not understand that he was taking the risk to which such undisclosed condition exposed him.

"These conclusions involve a dissent from the decision of the Supreme Court of the United States in the Mosher case (127 U. S., L. Ed. 249), but that great court, though entitled to the highest consideration, is nevertheless not an infallible tribunal. Its decisions ought not, therefore, to be followed in all cases merely because of the superior wisdom and dignity of the court. That case went off on demurrer, and Justice Gray adverted to the fact that both the ticket and petition described the agent at Hot Springs, who failed to be present to stamp the ticket, as the agent of the Hot Springs Railroad, and held that if it was the duty of that company, it was not of the Iron Mountain, to have him there. Here the case was tried on the facts, and the designated agent was present and refused to do what the ticket contemplated he would do. That feature might possibly distinguish that case from this. It would certainly be a superficial view to hold the mere reference in the ticket to the 'authorized agent of the terminal line,' inserted as means of identification to enable the ticket holder to find the proper person, as conclusive against the authority of such agent to act also for the initial line in the matter of furnishing it suitable protection against a fraudulent transfer of the ticket. The Supreme Court of Georgia, in Head v. Railroad Co., 7 So. Rep., 217, which seems to be a parallel case to this, sustain the conclusion we have reached.

"We also call attention to the fact that the fine-print conditions in the ticket upon which appellant's defense is founded seem to have been covered when the ticket was issued, by stamping upon them in red ink the provision of the act of 1893 declaring a penalty against persons transferring such tickets as this. Whether this should affect the question at issue we need not decide."

From this view the writer feels constrained to deferentially dissent.

The rights and duties of the parties respectively rest in this case upon the terms of an express contract, and these terms it becomes the duty of the court to enforce, unless in some feature they be without consideration, illegal, or void as against public policy.

The ticket is evidence of a contract supported by a sufficient consideration in the reduced rate at which it was sold. The clause to the effect that the appellant in selling the ticket acted as the agent and would not be responsible beyond its own line, is valid and binding. The appellant had the right thus to limit its liability. I am spared the necessity of stating my reasons for this conclusion by the opinion of our Supreme Court in Harris v. Howe, Receiver, 74 Texas, 534, approved in the later case of Railway v. Looney, 85 Texas, 158.

Hence follows also the validity of that clause of the ticket providing that "no agent or employe of any of the lines over which this ticket reads has power to modify the contract of this ticket in any particular."

So, the clause requiring the appellee, as a condition entitling him to a return passage, to cause the ticket to be signed and stamped by the agent of the terminal line at destination point is valid and binds the plaintiff, unless it can be held that as to the appellant the facts in this case

absolved the plaintiff from the obligation of presenting to the conductor a ticket thus stamped and signed, and provided with the requisite evidence of identification.

To thus hold I would be required to further conclude that the appellant was responsible for the negligence of the agent at Cairo. This I am unable to do, unless I can say that the agent at Cairo was the agent of the appellant. Now, it is manifest, under the terms of the contract above set out and believed to be effective, that no such relation, real or apparent, existed. On the contrary, the plaintiff had consented that the agent at Cairo should be regarded as the agent alone of the terminal line, viz., the St. Louis Southwestern Railway Co., or the "Cotton Belt" company. While the agent at Cairo was designated by the appellant as the person charged with the duty of identification, and of stamping and signing the ticket, he was thus designated by the appellant, not acting for itself, but acting in terms, as it had the right to do, as the agent of the terminal line. As between the plaintiff and the defendant, the agent at Cairo was as much the representative of the one as of the other, because he was the person agreed upon or chosen by them to discharge the necessary duty of identification.

As between the plaintiff and the terminal line, the agent at Cairo was the agent of that line. His negligence was the negligence of that company. For that negligence the appellant here cannot, under the terms of a valid contract, be justly held responsible. The plaintiff, under his statement, had a grievance, but it was against the company represented by the agent at Cairo who unnecessarily refused to accept the identification of the passenger. Against that company redress should have been sought for the negligence of its agent, not against the appellant, which, under the terms of the contract to which the plaintiff was voluntarily a party, had the right to demand a ticket fulfilling its terms and conditions.

This conclusion is in harmony with the trend of our decisions, as shown in Harris v. Howe, Receiver, and in Railway v. Looney, already cited, and with the explicit ruling in Central Trust Co. v. Railway Co., 65 Fed. Rep., 332, and Mosher v. Railway Co., 127 U. S., 390. This last case, which discusses the question quite elaborately, is cited, with many others, in Hutchinson on Carriers, p. 667, in support of the text of that learned author stating the doctrine on this subject as here indicated.

I do not regard the case of Railway v. Dennis, 4 Texas Civ. App., 90, as authoritative on the question considered. It involved neither a presentation nor a decision of this question. The only case to which I have been cited, or which I have been able to find, conflicting with the views here expressed, is that of Head v. Railway, 7 So. Rep., 217. That case antedates the Mosher case. I feel bound by the authority of the latter case, as I am unable to distinguish it from the present case, or to condemn the reasoning on which rests the court's conclusion.

The ticket considered is evidence, not of a joint, but of a several

contract on the part of the carriers concerned.   Railway v. Looney, 85 Texas, 158.   Under the fifth clause of its terms, the agent of the Cotton Belt or of "the terminal line" was charged with the duty of identification for the return passage.   For the dereliction of that agent the appellant was not responsible, for it had not contracted with the appellee that the "agent of the terminal line" would stamp and attest the ticket.   It had in terms, as it had a right to do, limited the liability to its own line, by and with the consent of the appellee.   It had also, by and with his consent, stipulated in the eighth clause of the contract that, "No agent or employe of any of the lines over which this ticket reads has power to modify the contract of this ticket in any particular."   It had not guaranteed that the agent of the terminal line would identify the passenger, but had on the contrary, by the terms of the contract of which the appellee as well as itself was a beneficiary, expressly excluded such a guaranty.   The duty of identification rested upon the terminal line, and for the consequences of a failure to comply with it, that company and not the appellant should be liable.

3.   After careful consideration, we find the remaining assignments of error without merit, and overrule them.   We deem it unnecessary to set them out or to discuss them.

In accordance with the opinion of the majority, the writer dissenting as indicated, it is ordered that the judgment be affirmed, provided that the appellee will, within twenty days, enter a remittitur of $250; otherwise, that the judgment be reversed and the cause remanded.

Delivered April 11, 1896.                     *Affirmed upon remittitur.*

Writ of error refused.