JOHN L. RUTHERFORD v. ST. LOUIS SOUTHWESTERN RAILWAY
COMPANY ET AL.

Decided March 1, 1902.

**1.—Carrier of Passengers—Excursion Ticket—Time Limit.**

Defendant railway company sold an excursion ticket over its own line and to G., on a connecting line, limited to the 23d of the month, but stipulating therein that the purchaser should be identified at G. and sign a return contract, and on the 23d the purchaser was so identified and signed the return contract, which provided that the purchaser agreed to use the ticket to the original starting point within the number of days punched in the return limit column thereon, the number of days so punched being "one" day. The purchaser at once commenced her return trip, reaching the connecting point of the two roads on the 24th. Held, that the ticket was good when presented on a train of defendant on the 24th, although the train would not reach the original starting point until the 25th.

**2.—Same—Evidence—Opinion.**

Plaintiff's witnesses should have been permitted to testify that the conductor's manner when he refused the ticket and used certain language was rude, impolite, and insulting, although this was matter of opinion.

**3.—Same—Evidence.**

Testimony as to the difference between the excursion rate and the regular fare should have been excluded as immatrial, the issue being as to whether or not plaintiff's ticket had expired by limitation.

**4.—Same—Written Contract—Parol Evidence Varying.**

The contract expressed by the ticket being a printed one, its terms could not be changed or varied by parol, and evidence that a verbal announcement that the tickets were limited to the 23d the entire trip, going and returning, was made to purchasers assembled in front of the ticket window, including plaintiff, was not admissible.

Appeal from Grayson. Tried below before Hon. Rice Maxey.

*Wilkinson & Stringer, Chas. S. Todd,* and *Wilkins & Vinson,* for appellant.

*E. B. Perkins* and *Head & Dillard,* for appellees.

RAINEY, CHIEF JUSTICE.—The appellant, as plaintiff, sued appellees, the St. Louis Southwestern Railway Company of Texas and the Gulf, Colorado & Santa Fe Railroad Company, to recover damages for offensive and insulting conduct of a conductor of the former company's passenger train toward appellant's wife, Mrs. Bird Rutherford, and the refusal of said conductor to accept the ticket presented by Mrs. Rutherford for her fare from Fort Worth to Mount Vernon; thereby causing her great mental distress, humiliation, and shame; and also for $5.20, which she was wrongfully compelled to pay for her fare.

After the evidence was closed, each of the defendants moved the court to direct a verdict in its favor. The motion of the Gulf, Colorado & Santa Fe Railway Company was confessed by the plaintiff, but that of the St. Louis Southwestern Railway Company of Texas was resisted.

Both motions were sustained by the court, and a verdict rendered, under direction of the court, against plaintiff and in favor of both defendants. Plaintiff moved for a new trial, which motion was overruled, and plaintiff has appealed.

The wife of the appellant purchased an excursion coupon limited ticket from the St. Louis Southwestern Railway Company at Mount Vernon, Texas, good for one first class passage to Galveston and return over its road and the Gulf, Colorado & Santa Fe Railway. On the return trip the conductor of the passenger train of appellee, St. Louis Southwestern Railway Company, known as the "Cotton Belt," refused to honor the ticket, required payment of fare, etc., the contention being that the limit had expired. This is the main point in issue on this appeal.

The face of the ticket contained the following provisions, to wit:

"This ticket is subject to the following conditions, in consideration of reduced rate: 'Good for one first class passage to point on Gulf, Colorado & Santa Fe Railway—between punch marks—and return. [The point indicated was Galveston, Texas.]

"This ticket is restricted and limited as follows: 1. When officially stamped and punched, with coupon attached, is good for transportation of the original purchaser whose name is signed below and 150 pounds of baggage not exceeding in value $100. 2. In selling this ticket the company acts only as agent and assumes no responsibility beyond its own line. 3. Going passage must be commenced on the date of sale as stamped on the back by issuing agent, and must be used to destination by or before midnight of date punched in 'going limit column.' 4. It is not good for return passage of any other than the original purchaser whose name is signed below, and who must identify himself or herself as such to the satisfaction of the agent of the terminal line of this ticket at destination, by signing his or her name to the return contract on the back of this ticket, which is a part of this contract, and by other means if required. 5. It will then be good for return passage, commencing on the date punched in column 'date of identification' to point purchased within the number of days punched in 'return transit limit' on back of ticket. 10. This contract must be signed in manuscript, with ink, by the person who is to use this ticket, and not by another for him or her. 11. No agent or employe has authority to change any of these conditions."

The following statement taken from appellant's brief further describes the ticket and shows the evidence relating to the issue, to wit: On the back of the ticket is a column showing days, months, and years, and marked "final limit," in the year 1900, the month of March and day 23 are punched. (This column is nowhere referred to in the ticket, nor its meaning defined.) On the back of the ticket is also a similar column marked "return transit limit column," in which the 1 (one) day is punched. This is referred to in the ticket on back and face and made "part of the contract." On the face of the ticket is the "going

limit column." There were four coupons attached, two over each road, going and return.

This contract was duly signed by Mrs. Bird Rutherford, as required, and was "used" by her immediately, on the date of issuance, March 20, 1900, on the "going passage." She reached Galveston in due time; and on the evening of March 23, about 7 o'clock, she presented the same to the agent of the Gulf, Colorado & Santa Fe Railway Company at Galveston, was identified, and signed the "return contract," and it was duly accepted, stamped and dated March 23 by said agent by punching the "date of identification column" and stamp. This "return contract" on the back of this ticket, referred to and made a part of the contract by the fourth condition on the face of it, was as follows: "In compliance with the condition of this ticket, I subscribe myself as the original purchaser and agree to use this ticket to original starting point within number of days punched in return limit column." This "number of days" was one day, the figure 1 being punched in said "return limit column" at the time of the purchase of the ticket, by the selling agent—the St. Louis Southwestern Railway Company's agent at Mount Vernon. She commenced her return trip immediately, within one-half hour after the ticket was vised, and continued to Fort Worth, reaching there on the morning of the 24th, too late to catch the morning train on the Cotton Belt. This ticket was presented by plaintiff's wife to the conductor of the Cotton Belt about 10 o'clock, between 10 and 11 p. m., certainly before midnight of the 24th of March.

A contract should be construed so as to give effect to all its provisions, if that can be consistently done. To construe the contract as contended for by appellee's counsel, that is, that having waited until the 23d, the "final limit," and commenced her return on that day, the ticket was good over the Gulf, Colorado & Santa Fe Railway to the point on its line called for, which was Fort Worth, though the trip to that point could not be completed on that day, but that it was not good over the Cotton Belt if presented for passage after that date, would, we think, render ineffectual that part of the contract by which the purchaser "agreed to use this ticket to original starting point within number of days punched in return limit column." This was a part of the contract, and should not be disregarded unless it is in direct conflict with the other provision of the contract and contrary to the intention of the parties as determined from the entire contract. The contract provided that the return passage should be commenced on the day punched in column "date of identification," which was the 23d, and be good "to point purchased within the number of days punched in 'return transit limit' on back of ticket." The number of days punched in "return transit limit" column was *one*. The ticket having been vised on the 23d and the return trip commenced on that day, it was good over the Cotton Belt for at least one day after the 23d; and as the law recognizes no fraction of a day, the ticket did not expire before midnight of the 24th, and as the ticket was presented to the conductor of the Cotton Belt passenger train before its expiration, it was

good for passage to the final destination on that line, though said destination was not reached till about 2 o'clock a. m. of the 25th.

This construction does not render ineffectual the "final limit" column, which names the 23d of the month. Construing "final limit" in connection with the "return passage" provisions, it means that the 23d was the last day on which the ticket could be vised and the return trip commenced. Giving it this construction does no violence to any other provision of the contract, but gives effect to all. Besides, it conforms, in our opinion, to the intention of the parties as we gather them from the terms of the contract.

Appellee cites Railway v. Looney, 85 Texas, 158, and Landers v. Railway, 50 Southwestern Reporter, 528, in support of its contention, and insists that the principle there announced is decisive of the case at bar. In the Looney case the ticket was over several independent lines, and by its terms had expired before being offered to the last carrier, which dishonored it. The court held the railway not liable. In the Landers case the ticket was similar to the one in this case. It expressly stipulated that it is not "in any case good for return passage after June 13th," and "good for return passage for only one day after being officially signed and stamped by the terminal agent." The ticket was signed and stamped on June 9th. The holder started back, but stopped over for several days, being told by the terminal agent that she would be allowed to do so. She resumed her journey and presented her ticket for passage at 2 a. m., June 14th. The court held, and we think correctly, the limit had expired and the ticket was not good for passage. These cases, under our construction of the contract in this case, are not decisive of the point here at issue.

Counsel for appellee calls our attention to the case of Rawitsky v. Railway, 31 American and English Railroad Cases, 129, as being in line with their contention. In that case the ticket was limited to August 8th, but it provided for return within fifteen days after identification and stamping. It was stamped July 14th. After the expiration of fifteen days from the stamping thereof, but before the 8th day of August, it was presented and dishonored. The court held that the fifteen day limit for return was binding and after that time the ticket was of no force. In that case it will be noticed that the court ignored the *final limit* and gives effect to the provisions relating to return passage. If that was proper in that case, why should it not be in this? The appellee, Cotton Belt, executed the contract. It stipulated that one day after the final limit, March 23d, should be allowed for return passage. Mrs. Rutherford accepted the ticket and started on her journey with that stipulation, and the evidence before us shows that she has complied therewith.

There seems to be little or no difference between counsel as to what the law is, but the difference is as to its application to the facts of this case, or rather as to the proper construction of the contract of carriage. Between the cases cited by the respective sides there seems to be no material conflict. The following authorities are in point and sup-

port the views we have expressed. Averbach v. Railway, 89 N. Y., 281; Lundy v. Railway, 66 Cal., 191; Head v. Railway, 7 S. E. Rep. (Ga.), 217; Railway v. St. John, 35 S. W. Rep., 501.

Upon the trial appellant's counsel asked of witnesses, "What was the manner of the conductor, as it appeared to you, at the time that he refused the ticket and used the language to which you have testified? I mean as to whether his manner was polite and courteous, or otherwise?" This was objected to on the ground that it sought to elicit the opinion or conclusion of the witnesses, and that the answers would be such opinion or conclusion. The objection was sustained and the witnesses were not permitted to answer. They would have answered that the conductor's manner was impolite, rude, and insulting. We are of the opinion that this action of the court was error. Mr. Greenleaf says: "Generally opinions, like other testimony, are competent in the class of cases in which they are the best testimony; as where a mere description, without opinion, would generally convey an imperfect idea of the force, meaning, and inherent character of the things described. Nonexperts may give their opinions on questions of identity, resemblance, apparent condition of the body or mind, intoxication, insanity, sickness, health, value, conduct, and bearing, whether friendly or hostile, and the like." 1 Greenl. on Ev., sec. 439, 13 ed., p. 495, note 2; Railway v. Broussard, 69 Texas, 617; Railway v. Richards, 83 Texas, 203; Railway v. Garteiser, 9 Texas Civ. App., 456. Words spoken may in themselves be inoffensive, yet if uttered in a rude and insulting manner may be very objectionable. The manner and demeanor of one can not well be described without the expression of an opinion, that being the best evidence of which it is susceptible. The evidence sought was pertinent, as it tended to prove the allegations of plaintiff's petition regarding the offensive and insulting conduct of the conductor, which, if proven, warranted a recovery. Railway v. Tarkington, 3 Texas Ct. Rep., 852.

We think the court also erred in permitting witnesses to testify, over objections, as to the difference between the excursion rate and the regular fare, the same being immaterial. Also as to the general announcement of the selling agent to purchasers then assembled in front of the ticket window, including the plaintiff and wife, to the effect that the tickets were limited to the 23d the entire trip, going and returning. The contract was expressed by being printed on the ticket, and the terms were not subject to change or variation by such an announcement. 4 Elliott on Railroads, sec. 1593. The same may be said of the questions asked Mrs. Rutherford as to the effect the delay in Fort Worth would have in regard to the limit of the ticket. There is no liability shown as to the Gulf, Colorado & Santa Fe Railway Company. The judgment is affirmed as to it, and is reversed and remanded as to the St. Louis Southwestern Railway Company of Texas.

*Reversed and remanded.*