7997

CORLEY v. SOUTHERN RY.

CARRIER.—WHERE A PASSENGER buys a return trip ticket required by its terms to be validated at the terminal station under the representation from the selling agent that he could get off the train at a point short of the terminal station and the agent there would send it to that station to be validated, and upon his arrival there the agent refused to forward the ticket for validation, and while attempting to return on the unvalidated ticket he is expelled from the train after making full explanation to the conductor, he is entitled to punitive damages.

Before WILSON J., Edgefield, October, 1909. Affirmed.

Action by P. H. Corley against Southern Railway. Defendant appeals.

*Messrs. B. L. Abney, N. G. Evans* and *S. M. Smith,* for appellant. *Mr. Evans* cites: *Mental suffering not accompanied with bodily injury is not recoverable in this case:* 82 S. C. 478; 84 S. C. 21; 52 S. C. 326; 57 S. C. 330; 78 S. C. 559. *Passenger must comply with conditions of his ticket:* 77 S. C. 361; 26 S. C. 91; 17 L. R. A. 80; 9 L. R. A. 132; 53 La. 201. *Ticket and not statement of passenger must control conductor:* 132 U. S. 146; 14 L. R. A. 376; 17 L. R. A. 80; Fetter on Car., sec. 289; 38 S. C. 1. *Puni-*

*tive damages:* 62 S. C. 335; 54 S. C. 505. *Intercourse of stranger with juror without permission of Court warrants new trial:* 25 S. C. 168; 38 S. C. 333.

· *Messrs. Thurmond & Nicholson* and *George Bell Timmerman,* contra, cite: *Punitive damages are recoverable for fraudulent breach of contract:* 70 S. C. 116. *Oral testimony is competent to show the contract:* 71 S. C. 150; 6 Cyc. 557; 3 Rich. 580; 69 S. C. 327. *Punitive damages:* 69 S. C. 327, 110; 64 S. C. 514; 71 S. C. 446.

August 10, 1911. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. On June 14, 1907, defendant's agent at Columbia, S. C., sold plaintiff a round-trip ticket to Swannanoa, N. C., with a printed contract on it, which contained, among others, the following provisions: "4th. This ticket shall not be good for return passage unless the holder identifies him or herself by signature on back hereof and otherwise as original purchaser to the satisfaction of the agent of the Southern Railway Company at destination, and when officially signed and stamped by said agent, this ticket shall then be good for return passage of the original purchaser only. 8th. No agent or employee of any line over which the purchaser is entitled to travel by the terms of this ticket has any power to alter, modify, or waive in any manner, any of the conditions named in this contract. In consideration of the reduced rate at which this ticket is sold, I, the original purchaser, hereby agree to be governed by all the conditions as stated above. * * * I will not seek to hold any of such companies liable for damages resulting to me from any statement of any employee thereof, not in accordance with the terms of this contract as expressed upon this ticket." It contained, also, the following notices at different places on the ticket: "This ticket must be signed, witnessed by agent, and stamped at destination before it will

be good for return passage; To purchaser: Read the above contract, and take notice that the return portion of this ticket must be stamped and your signature witnessed in the manner prescribed before it will be honored for passage."

This contract was signed by plaintiff, who alleged in his complaint and testified that he bought the ticket and signed it, under the following circumstances: He went to defendant's up-town office in the city of Columbia and asked the agent for a round-trip ticket to Asheville, N. C. The agent said, if he had come a little earlier, he could have sold him a special round-trip excursion ticket to Swannanoa, N. C., a station about two miles from Asheville on defendant's road to Salisbury, for about two dollars less than the regular round-trip ticket to Asheville, but that was the last day those tickets were on sale, and it was then nearly time for the last train on which they could be used to leave Columbia. But the agent telephoned to the railway station and ascertained that the train was running late and that plaintiff would have about twenty minutes to catch it, and advised plaintiff to buy that ticket. Plaintiff told him he did not want to go to Swannanoa, and did not want to buy a ticket to that place, if it would put him to any inconvenience. The agent told him it would not be necessary for him to go to Swannanoa; that, while it was usually necessary to have the ticket stamped by the agent at Swannanoa, if he would present it to defendant's agent at Asheville, he would send it to Swannanoa and have it stamped and returned in time for his return trip, and he assured plaintiff that it was the custom and duty of defendant's agent at Asheville to do this. Relying upon this assurance, plaintiff bought the ticket and signed the contract without reading it. On arriving at Asheville, he presented the ticket to the agent there, and requested him to send it to Swannanoa and have it validated, telling him what the agent at Columbia had said. The Asheville agent told plaintiff that had been the custom, but it had been discontinued, and refused to have the ticket validated.

On his return trip, plaintiff undertook to use the ticket notwithstanding it had not been validated. Fearing the gateman would not allow him to pass to the train on presentation of the unstamped ticket, be bought a ticket to Biltmore, a station about two miles from Asheville on the road to Columbia, upon which he was admitted to the train. After passing Biltmore, the conductor demanded his fare, and he presented the unvalidated ticket, which was refused, after he had informed the conductor what had passed between him and the agent at Columbia and of his efforts to get the agent at Asheville to have the ticket validated. As evidence of his good faith and of the truth of his statement, he offered to pay his fare, if the conductor would agree to go with him to the agent at Columbia, and if he confirmed his statement, pay it back or see that he got it back. This proposition was declined; and, upon plaintiff's refusal to pay his fare, he was ejected. He returned to Swannanoa, had his ticket validated and was carried on it the next day to Columbia.

At the trial, the Columbia agent admitted that what took place between plaintiff and himself was as narrated by plaintiff, except what he said about having the ticket validated for the return trip. As to that, he said he told plaintiff the ticket would have to be validated at Swannanoa; and that plaintiff asked if the Asheville agent could not do it, as it was all on the same line; that he replied, you will have to see the agent at Asheville about that. The Asheville agent and the conductor, who ejected plaintiff, both admitted that plaintiff told them what had passed between himself and the Columbia agent as stated by plaintiff, and the Asheville agent further admitted that it had, before his encumbency as agent, been the custom for the Asheville agent to have round-trip tickets for Swannanoa validated, as plaintiff testified the Columbia agent had told him. It also appeared that Swannanoa was reached on this ticket either by changing cars at Biltmore or at Asheville. Under the instruc-

tions of the Court, the jury rendered a verdict for plaintiff for $800.00.

This Court has held, in a number of cases, that when a person signs a contract, like the one here in question, in the absence of fraud, misrepresentation or mistake, he is conclusively presumed to have known and assented to all of its conditions and stipulations. *Smith* v. *Ry.,* 88 S. C. 424, and cases cited. But it is elementary that no one is bound by a contract which he is induced to make in reliance upon false representations as to material matters of fact. The allegations and evidence in this case raised an issue of such misrepresentation, which was properly submitted to the jury, and, by their verdict, it was resolved in favor of plaintiff. In the Smith case, *supra,* the Court said: "It is a ticket agent's duty, and, therefore, within the scope of his authority, to give passengers correct information with regard to their tickets, and to provide them, upon payment of the fare, with proper tickets. Therefore a passenger has a right to rely upon the information given him by a ticket agent. The traveling public are not concerned with the management of the affairs of railroad companies. They are not presumed to know the rules and regulations adopted by the companies for the guidance of their agents; nor are they presumed to know the limitations of the authority of the agents of the companies. * * * The weight of reason and the trend of judicial thought is in favor of the doctrine that a passenger has the right to rely upon the statements and assurances of a ticket agent as to the sufficiency of the ticket furnished him as the evidence of his rights as a passenger, and that the carrier is liable for the errors and omissions of such agents resulting in injury to the passenger. (Cases cited.) The foregoing cases also hold that it is the duty of the conductor, in such circumstances, to heed the reasonable explanations of a passenger as to his ticket, or his right to ride, and our own decisions are to the same effect. (Cases cited.) The rule requiring the conductor to heed

the reasonable explanations of the passenger, instead of allowing him to demand the payment of fare, on pain of expulsion from the train, works less hardship, inconvenience and expense on the carrier than the opposite rule would on the passenger; for it is generally an easy matter for the conductor to ascertain whether the explanation of the passenger is true or false, because the stations along the railroads are nearly all connected by telephone or telegraph lines, which the agents of the companies may use with little trouble, and at little or no expense. It is a serious matter to expel a passenger from a train. It subjects him to humiliation, and it is calculated to wound the feelings of any self-respecting passenger. Therefore the law allows punitive damages for the wrongful expulsion of a passenger, and also for compelling him to pay money under threat of wrongful expulsion. (Cases cited.) Consequently the law is that a carrier must be allowed to resort to so harsh and extreme a measure only at the peril of being able to justify it."

Under the circumstances, plaintiff had the right to rely upon the representations of the Columbia agent, and it was the duty of the Asheville agent to have the ticket validated, and the duty of the conductor to heed plaintiff's explanation as to his right to ride on it. As was said in the Smith case, the defendant will not be heard to say that it manages its business so that it makes a contract through one of its agents which it can violate through another with impunity. The verdict establishes the fact that the real contract was that the agent at Asheville should have the ticket validated, and plaintiff had the right to have that contract performed. A carrier has no right to eject a passenger because his ticket is not properly validated, where the omission is due to the fault of its own agents, or to its own fault. *Head* v. *Ga. Pac. R. Co.,* 79 Ga. 358, 11 Am. St. Rep. 434. *Wood* v. *Ry.* (Ga.), 55 L. R. A. 536; *St. John.* v. *Gulf etc Ry. Co.* (Tex. Civ. App.), 35 S. W. 501.

Affirmed.