MYERS v. SOUTHERN·RY.

1. RAILROADS—PASSENGERS—EXAMPLARY DAMAGES.—Where it is shown that a passenger buys a limited ticket, and misses connection at junctional point, taking next train after time limit for destination, and after this explanation conductor collects fare on threat of expulsion, there is sufficient evidence to go to jury on question of examplary damages.

2. IBID.—IBID.—WHERE CONDUCTOR threatens to eject passenger unless he pays, and he pays and never leaves the car, there is no technical ejection, and in this case it is error to submit such question to the jury, as that issue is not raised by pleadings or proof. *Georgia R. R. and Banking Co.* v. *Eskew,* 86 Ga., 641, *distinguished from this.*

Before BENET, J., Barnwell, November, 1901.   Reversed.

Action by Essie Myers, by her guardian, T. S. Myers, against Southern Railway. From judgment for plaintiff, defendant appeals.

*Messrs. B. L. Abney, Joseph W. Barnwell* and *Robert*

*Aldrich,* for appellant, cite: *The law of exemplary damages*—(1) *Text Books:* Sedg. on Meas. of Dam., 4 ed., 35; 60 S. C., 67; 1 Suth. on Dam., 716, 724; 12 Ency., 2 ed., 13. (2) *English cases:* 2 Wilson, 205, 244; 3 Wilson, 18; 5 Taunt, 442; 2 Stark, 317. (3) *South Carolina cases:* 1 Bay, 6; 2 Bay, 416; 4 Rich., 573; 8 Rich., 144; 9 Rich., 423; 11 Rich., 283, 649; 12 Rich., 254; Dud., 92; 14 Rich., 237; 3 S. C., 580; 52 S. C., 344; 60 S. C., 48, 67; 57 S. C., 228; 61 S. C., 170; 35 S. C., 475, 493; 37 S. C., 194. *Pleading under Act of 1898:* 57 S. C., 254; 60 S. C., 48; 61 S. C., 170. *Question of punitive damages should not have been submitted to jury:* 3 S. C., 580.

*Messrs. Davis & Best,* contra, cite: *Question of technical ejection was properly submitted to the jury, and if act of conductor was wilful or wanton, they could find punitive damages:* 86 Ga., 641.

October 10, 1902. The opinion of the Court was delivered by

Mr. JUSTICE JONES. The plaintiff, a young woman between fourteen and eighteen years old, bought a ticket for passage over the defendant's railroad from Allendale to Orangeburg by way of Blackville and Branchville, limited by its terms to 12 P. M. on the 3d day of February, 1901. When she reached Blackville, the connecting train at that point between Augusta and Branchville had left, and the plaintiff stayed at Blackville with a friend, without expense, the night of the 3d day of February. The next morning, after expiration of the time limit, she boarded the first train to Branchville. When she presented said ticket, the conductor refused to receive it, saying that if the plaintiff did not pay the fare he would have to put her off; and when she explained the circumstances under which she had failed to use the ticket before its expiration, as stated above, the conductor replied that he could not help that. Thereupon she paid the fare demanded from Blackville to Branchville,

and on boarding the train from Branchville to Orangeburg was compelled to pay the fare between said points, both fares amounting to about $2.00. The complaint was for both actual and examplary damages, and after alleging facts substantially as above set forth, charged that the action of the defendant company was wilful, wanton and malicious, and that by reason of the aforesaid facts the plaintiff had been greatly outraged, humiliated in her feelings, and caused to suffer great mental anxiety, to her damage $1,500. The jury rendered a verdict for $237.50. The defendant offered no testimony, and in open Court, before the jury were instructed, admitted liability for actual damages to the amount of $2.00, the car fares paid to the conductor as stated. The appellant's exceptions are to the charge of the Court to the jury, and relate to the question of examplary damages, as follows:

"I. That it is respectfully submitted that his Honor, the presiding Judge, erred in instructing the jury, as requested in part by plaintiff, 'That if the jury believe that if the plaintiff presented her ticket to the conductor while traveling on the aforesaid train for Orangeburg, and the conductor refused to receive it, and demanded additional fare to Orangeburg, threatened to eject plaintiff unless such additional fare was paid, then in that case, in addition to actual damages, plaintiff would be entitled to recover examplary damages, provided the jury find that the plaintiff was treated with indignity, insult or contempt;' and in adding thereto the words: 'I do say that if the conduct of the conductor amounted to insult or contempt, it would be a basis for examplary or punitive damages.' Whereas, it is submitted that there was no evidence on the part of the plaintiff showing indignity, insult or contempt, or from which the jury were authorized to infer such indignity, insult or contempt, or for which they would be authorized to give examplary or punitive damages.

"II. In charging the jury that if the plaintiff was entitled by her ticket to be taken from Allendale to Orangeburg, and if she was ejected, or threatened to be put off, and if, under

the influence of such a threat of being put off, she did pay the fare to prevent being put off, then it will be left for you to say whether that would amount to a technical ejection or not; and if the conduct of the conductor, in so threatening, was, in the language of the complaint, wilful or wanton, then it would be a ground of punitive damages in whatever amount you might think justifiable, not more than the amount claimed or more than in your opinion ought to be granted. Whereas, it is submitted that there is no evidence on the part of the plaintiff from which wanton or wilful conduct could reasonably be inferred by the jury, no evidence that plaintiff was ejected, or any other evidence warranting the jury in finding punitive damages.

"III. In refusing to charge the first request submitted by defendant in the following words: 'That the damages which plaintiff could possibly recover in the present suit for any delay in making connection, is limited to the expense incurred by her by reason of such delay,' without adding any other words thereto; and in further adding thereto the words: 'That does not, of course, prevent the jury from considering the question of punitive damages.' Whereas, it is submitted that there is no evidence on the part of the plaintiff from which the jury were authorized to find punitive damages for the delay alleged in the complaint and referred to in the evidence.

"IV. In refusing to charge the second request submitted by defendant, 'that even if the jury find that the plaintiff was wrongfully compelled to pay her fare from Blackville to Orangeburg, the only damages they could find for the plaintiff is the amount paid by her for her ticket from Blackville to Orangeburg, admitted by defendant to be $2.00, inasmuch as no physical injury was inflicted upon plaintiff nor any insult nor indignity;' and further, in adding to the said request the following words: 'I cannot so charge you. The last part would ask me to say what is or is not in evidence. If there was no evidence whatsoever on the question of wilful conduct on the part of the conductor, I might charge

you that; but as I have said to counsel before, where there is any evidence, no matter how slight, tending to show wilful or wanton or malicious conduct on the part of a conductor of the railway company, the Court is not allowed to say to the jury that it was not sufficient, and I cannot say here that there is none. Therefore, the request is refused.' Whereas, it is submitted that there was no evidence whatsoever from which the jury were authorized to infer wilful, wanton or malicious conduct on the part of the conductor.

"V. In charging the jury as follows : 'I have to say to you that you must look into the testimony and see whether she (the plaintiff) has made a good claim for vindictive or punitive damages ; was the conduct of the railway conductor, if he, as alleged, threatened to put her off unless she paid, was that a wilful act on his part, or a wanton or malicious act ? Was it such an act as subjected her to indignity ? Such as would humiliate her in the presence of others ? If so, then you would have to say whether, on that account, she should have vindictive damages. There is no doubt that railway companies are liable in damages when their servants, through whom they act, subject passengers, who are in their cars, to indignity or oppression, or conduct themselves towards them in a way that shows utter disregard of their feelings or their rights, and humiliate them in the presence of others.' Whereas, it is submitted that there was no evidence on the part of the plaintiff from which the jury were authorized to infer indignity, or oppression, or disregard of the feelings of the plaintiff, or tending to humiliate her in the presence of others, or showing that the conduct of the conductor was wilful, wanton or malicious."

It will be observed that these exceptions all make the point that there was no evidence to go to the jury on the question of examplary damages. The testimony was to the effect stated above, and in our opinion was such as to warrant submitting the issue to the jury. The defendant's conductor was informed by plaintiff of the circumstances under which she claimed the right to use said

ticket as passenger. The defendant makes no exception to the charge of the Court to the effect that, as matter of law, plaintiff in the circumstances stated, if true, had the right to use said ticket for passage on said train, and, indeed, on the trial, defendant admitted liability for actual damages. It was fairly left to the jury in other portions of the charge to determine whether defendant's agent was merely negligent in his conduct or whether he was acting wilfully or wantonly. If defendant's agent, conscious of plaintiff's right as passenger, nevertheless invaded that right by exacting and coercing an unlawful payment of money under threat of expulsion from the train, his conduct was wilful or wanton, such as would subject defendant to examplary damages.

In addition to the matter just considered, the second exception involves another point. It is complained that the Court left it to the jury to say whether the conduct of defendant's agent amounted to a "technical ejection."

2    Respondent argues that there was a technical ejection, and cites as authority *Georgia Railroad & Banking Co.* v. *Eskew,* 86 Ga., 641, 12 S. E. R., 106, 22 Am. St. Rep., 492. The case does not sustain respondent's view. The language of the Court is: "Although the conductor neither used physical force to expel the plaintiff from the train nor was immediately present when the plaintiff left the train at Conyers, yet it was, in fact, an expulsion, if the plaintiff alighted against his own will and as an act of obedience to the conductor's previous command." This has no applicability to a case where the passenger does not leave or is not put off the train. In the case before us, the passenger never left the train under threat or command or otherwise, and we are at a loss to conceive how the matter of ejection from the train could in any view be submitted to the jury. Plaintiff's case was not based upon any unlawful ejection from the train, but was based upon an unlawful and wanton coercion of the payment of money under threat of expulsion from the train. Such an issue was not only foreign to the case as alleged and proven, but it was harmful

to submit it to the jury, because under such instruction the jury may have supposed that they were at liberty to treat the case as one in which there had been, in effect, an unlawful ejection from the train.   It is true, the verdict of the jury was not very large, but we are unable to ascertain the extent the jury were influenced by the erroneous charge by any consideration of the amount of the verdict.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.