### 7795

#### TOLLESON v. SOUTHERN RAILWAY.

1. CARRIER—PASSENGER—CONDUCTOR—PUNITIVE DAMAGES.—The testimony here tends to show that both the carrier selling the ticket and its connecting carrier are liable for the acts of the conductor of the connecting carrier and that his conduct was consciously oppressive, thereby giving rise to a claim for punitive damages.

2. PUNITIVE DAMAGES.—The part of the charge here objected to, construed to mean an act may be wilful when the wrongdoer does not actually realize that he is invading the rights of another, provided the act is committed in such a manner that a person of ordinary reason and prudence would say it was in reckless disregard of another's rights.

Before WILSON, J., Greenville, March term, 1910. Affirmed.

Action by Annie Tolleson and A. J. Tolleson against Southern Railway Company and Blue Ridge Railway Company, on the following complaint:

I. "That defendants, as plaintiffs are informed and believe, are corporations engaged in business as common carriers of passengers for freight and hire, under and pursuant to the laws of the State of South Carolina, and the defendant, Southern Railway Company, has a line of railroad and general offices for the transaction of business in said county and State, and there are some sort of mutual

arrangements between the defendants, whereby the one sells tickets directly over the railway of the other in said State.

II. "That plaintiff, A. J. Tolleson, is the husband of the plaintiff, Annie Tolleson, and that for that purpose is joined as a party to this action.

III. "That heretofore, on January 26, 1909, the plaintiff, Annie Tolleson, having received information that her grandchild had died at Pendleton, S. C., went early in the morning of said day to the passenger station of the defendant, Southern Railway, in the city of Greenville, and, by and through her son, requested a ticket from Greenville to Pendleton, S. C., via Belton, which was the route theretofore used by plaintiff in going to Pendleton to see her relatives. That the train from Greenville to Belton was due to leave in a short while, when plaintiff, through her son, asked for and purchased said ticket, and plaintiff paid the full price of said ticket from Greenville to Pendleton, via Belton.

IV. "That plaintiff became a passenger on the train from Greenville to Belton, and presented to the conductor of said train the ticket which she had purchased, and said conductor punched a hole in the ticket and returned the same to the plaintiff, Annie Tolleson. That at Belton, pursuant to her custom, and pursuant to the route of the ticket which the plaintiff, Annie Tolleson, had asked for, she changed cars, and took passage upon what is commonly known as a train of the Blue Ridge Railway Company, over which plaintiff had purchased a ticket at Greenville, S. C. That plaintiff presented the same ticket to the conductor of said train, and he refused to accept the same. Plaintiff undertook to explain the transaction to said conductor, telling him that she was an aged and ignorant lady; that she had no cash with her except a little change, and that, through her son, she had purchased a ticket to Pendleton, via Belton, in the hope of reaching Pendleton in time to attend the burial of her dead grandchild. That the conductor on said train was

obstinate, and told plaintiff that if she did not pay the cash fare he would be obliged to eject her from the train. That plaintiff paid the conductor all the money she had on her person, and said conductor gave her a receipt for same, for seventy (70) cents. That by reason of the negligence, recklessness and wantonness of the defendants in failing to provide transportation for plaintiff from Greenville to Pendleton, as she had contracted for, plaintiff was subjected to humiliation, inconvenience, annoyance, and the sum of seventy (70) cents was exacted from her illegally, in excess of the rate allowed by law, and in conscious violation of the rights of plaintiff. That by reason of the negligent, reckless and wanton conduct of the defendants, acting jointly and concurrently in the premises aforesaid, plaintiff has been damaged in the sum of two thousand ($2,000) dollars. That this action is brought for the benefit of the plaintiff, Annie Tolleson, who is designated generally as the plaintiff.

"Wherefore, plaintiffs pray judgment against the defendants for the sum of two thousand ($2,000) dollars and the costs of this action."

The defendants appeal on the following grounds:

First. "The presiding Judge erred in refusing the defendants' motion for a nonsuit as to the cause of action based upon an alleged wilful wrong, for the reason:

"(1) That there was no evidence tending to show any wilful wrong on the part of the conductor of the Blue Ridge Railroad.

"(2) That there was no evidence tending to show any wilful wrong on the part of the employees and agents of the Southern Railway Company.

Second. "Presiding Judge erred in charging the jury, in response to the plaintiffs' second request to charge, and in defining a wilful, wanton or reckless tort: 'To do a thing wantonly, recklessly and wilfully is doing something when you are conscious that you are invading the rights of somebody else, or doing it under circumstances when a jury

would say that whether the party actually realized he was invading the rights of another or not, yet if the circumstances were such that a person of ordinary reason and prudence should have realized he was invading the rights of another.'

"Specifications: Punitive damages are recoverable only for a wilful, wanton or reckless act; to justify the jury in finding that an act was wilful, wanton or reckless, the evidence must show a conscious disregard of the rights of another, or reckless indifference, and not simply a negligent failure to appreciate those rights. The Judge allowed the jury to impose punitive damages for the alleged wilful, wanton and reckless act if they came to the conclusion, from the testimony, not that the defendants actually realized that they were invading the rights of the plaintiff, but that the circumstances were such that a person of ordinary reason and prudence should have realized that he was invading the rights of the plaintiff.

Third. "In refusing to charge the first request of the defendants, as follows: 'The testimony shows, at most, as against Southern Railway Company, a case of negligent mistake in not giving plaintiff a ticket for the route called for by her. There is no evidence justifying a verdict for punitive damages against Southern Railway Company.'

Fourth. "Presiding Judge erred in refusing to charge the second request of the defendants, as follows: 'There being no evidence justifying punitive damages, the plaintiff is confined to actual damages proved, the cost of her additional ticket, seventy cents, as against Southern Railway Company, even if entitled to that.'

Fifth. "Presiding Judge erred in refusing to charge the third request of defendants, as follows: 'The Blue Ridge Railroad, a connecting carrier, is not responsible for the mistake of the Southern Railway Company, the initial carrier, referred to in paragraph 1 above.'

Sixth. "Presiding Judge erred in refusing to charge the fourth request of defendants, as follows: 'As against Blue Ridge Railroad Company, there is no evidence justifying a verdict for punitive damages.'

Seventh. "Presiding Judge erred in refusing to charge the fifth request of defendants, as follows: 'As against Blue Ridge Railway Company, there is no evidence justifying a verdict for actual damages.'

Eighth. "The presiding Judge erred in charging the fourth request to charge of the plaintiffs. That request was as follows: 'If the jury find that the plaintiff was a passenger upon a train of the defendant, Blue Ridge Railroad Company, and presented to the conductor thereof a ticket that was in proper form, and if the jury find that said ticket was in an improper form, because of the fault or mistake of some agent of the defendant, Blue Ridge Railroad Company, and if the plaintiff offered to make a reasonable explanation to the conductor with reference to her ticket, then it was the duty of said conductor to accept and heed such reasonable explanation, and to respect the rights of the plaintiff.'

"Specifications: (1) The only fact from which it could possibly be inferred that the mistake in the ticket was due to the fault of some agent of the Blue Ridge Railway, was that the Southern Railway Company sold the through ticket, good over the Blue Ridge Railway. Such arrangement did not so constitute the Southern Railway Company the agent of the Blue Ridge Railway as to make the latter responsible for the mistake of the former in not giving the ticket asked for. There was, therefore, no evidence to which this charge was applicable, and the charge was calculated to prejudice the defendant, Blue Ridge Railway Company, by permitting the jury to draw the inference of agency from the fact referred to.

"(2) There was no testimony to the effect that the plaintiff offered to make reasonable explanation to the conductor

with reference to her ticket; there was, therefore, no evidence to which this charge was applicable, and the charge was calculated to prejudice the defendant, Blue Ridge Railway Company, by permitting the jury to draw the inference of such reasonable explanation from the testimony of the plaintiff, to the effect that she had shown her ticket to the conductor, telling him nothing but that she had bought her ticket."

*Messrs. Cothran, Dean & Cothran,* for appellants, cite: *There is no evidence to show Southern was guilty of a wilful tort:* 35 S. C. 489; 21 How. 207. *Nor that Blue Ridge was guilty of such tort:* 16 L. R. A. 347. *Charge as to what would justify punitive damages is erroneous:* 22 N. W. 666; 61 S. C. 188. *Blue Ridge was not responsible for act of Southern:* 80 S. C. 139; 21 S. C. 35; 38 S. C. 431. *As to duty of conductor to accept version of passenger:* 23 So. 187.

*Mr. J. J. McSwain,* contra, cites: *Failure to carry on a punched ticket is wilful disregard of passenger's rights:* 75 S. C. 116; Hutch. on Car., sec. 1066; 12 S. E. 747. *What acts may amount to wilfulness?* 65 S. C. 326, 517, 77; 78 S. C. 67.

February 28, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages alleged to have been sustained by the plaintiff, Annie Tolleson, on account of the negligent and wanton conduct of the defendants in selling her a ticket to Pendleton, S. C., via Seneca, when she had asked for a ticket to Pendleton, S. C., via Belton; in refusing to honor the ticket so sold, when she had undertaken to go to Pendleton via Belton; and, in demanding fare under threat of expulsion, thereby inconveniencing, humiliating and annoying her.

These facts are detailed in the complaint, which will be reported.

The jury rendered a verdict, in favor of the plaintiff for $350.00, and the defendants appealed from exceptions, which will also be set out, in the report of the case.

There was testimony to the effect that the conductor on the C. & G. train, (a branch of the Southern Railway), which runs from Greenville to Columbia, via Belton, made no objection to the ticket, and, after punching it, handed it back to her.

The plaintiff, Annie Tolleson, testified as follows:

"When you got on the train, what happened to you? I handed my ticket to the conductor, and he said I couldn't ride on that ticket, and said if I didn't pay the money, he would put me off, and that is all that he said to me. What did you say to him? I told him nothing—I bought my ticket, and he said, 'It don't make any difference, if you don't pay the money I will put you off.' How did he say that to you? He said it pretty ill. What effect did that have on you? I was scared so bad, I didn't know what to do. I was afraid he would put me off, and I didn't know nobody there on the train. Did you have any money? I started from home with two dollars, and it took it all to carry me there. I couldn't count it. Did you have any money when the conductor told you, if you didn't pay your fare he would put you off? Yes, sir. How much? Just enough to pay my fare; I paid that, and I give you the ticket. In what shape did you have that money, the change from the two dollars? It was in small change. Did you know how much it was? No, sir. Tell us how it was, whether or not it was in a purse, or how it was? It was in a little small place. Where was it? Tied up in a pocket handkerchief. Who untied it? I tried to, and I was not fast enough and the conductor said he would take it out, and he untied it. What did he give you back? The ticket."

W. L. Sanders, the conductor on the Blue Ridge train, testified on cross-examination as follows:

"You say, if you had not exacted that additional fare, that the Blue Ridge would have lost eleven miles? Yes, sir; the distance of eleven miles. As a matter of fact, you know the Southern operates the Blue Ridge? Yes, sir; but it runs under a different name altogether; different reports. Don't the Southern Railroad pay its debts? I suppose it does. Don't you know if you had made a memorandum of this particular ticket here, the whole ticket, showing that you carried the passenger from Belton up to Pendleton, that you could have gotten out of the Southern Railroad, from Peter over to Paul—could have had Peter to pay Paul? I had a shorter way collecting it than that; collect her fare, and all that she had to do was to send the ticket to the superintendent."

This testimony tends to show, that both defendants were liable, for the acts of the conductor on the Blue Ridge train, and that his conduct was consciously oppressive, thereby giving rise to a claim for punitive damages. *Chiles* v. *Ry.,* 69 S. C. 327, 48 S. E. 252; *Myers* v. *Ry.,* 64 S. C. 514, 42 S. E. 598.

These views dispose of all the exceptions, except the second, which will next be considered.

Our construction of the request, set out in the second exception, is, that his Honor, the presiding Judge, merely meant to charge the jury, that, not only is the conscious invasion of the rights of another, in a wanton, wilful, and reckless manner, an act of wrong, but that the same result follows, when the wrongdoer does not actually realize that he is invading the rights of another, provided, the act is committed in such a manner, that a person of ordinary reason and prudence would say, that it was a reckless disregard of another's rights.

As thus construed the charge was free from error, and this exception is also overruled.

Judgment affirmed.

MR. CHIEF JUSTICE JONES *did not sit in this case.*