## 8476

### CAMPBELL v. SOUTHERN RY.

CARRIER—PASSENGER—MILEAGE BOOKS.—Where a passenger presents at a station two mileage books owned by him and asks for two mileage exchange tickets to a station in another State which are given him by the ticket agent, and on the train presents to the ticket collector the two tickets, one for himself and one for his wife, and the ticket collector asks to see the mileage books and refuses to permit the wife to ride on the ticket, but demands and is paid cash fare for her, and he then confiscates one mileage book, the latter act is a violation of the passenger's right for which the carrier is liable.

Before PRINCE, J., Greenville, June term, 1912. Affirmed.

Action by S. J. Campbell against Southern Railway Company. Defendant appeals.

So much of the complaint and answer as are admitted in the agreed statement of facts is:

1. "The defendant, Southern Railway Company, is a corporation organized by and under the laws of the State of Virginia, and operates a line of railway through Greenville county, South Carolina.

2. "On the 20th day of November, 1910, the plaintiff, being the owner and possessor of a thousand mile coupon book issued by defendant and commonly known and hereinafter referred to as 'mileage book,' applied to the agent of defendant at Greensboro, North Carolina, in its passenger station, for another thousand mile coupon book and purchased the same. For each of said books plaintiff paid the sum of twenty dollars.

3. "On the said day at Greensboro the plaintiff presented both said books to the agent of defendant and asked for and received two mileage exchange tickets to Greenville, South Carolina. With these tickets the plaintiff and his wife traveled to Greenville, South Carolina, the same being accepted for passage on one of defendant's regular passenger trains by one of its ticket collectors.

4. "After remaining in Greenville several days plaintiff and his wife, on the 24th day of November, 1910, went to the passenger station there. Plaintiff presented his two mileage books, both of same bearing his name and describing him by age, color, complexion and in other ways, as plaintiff is informed and believes, for the purpose of identification, and plaintiff asked for and received of defendant's agent two exchange tickets to Greensboro, the agent detaching the proper number of coupons from each of said books, which plaintiff is informed and believes were two hundred miles from each book, of the value of four dollars each.

5. "The plaintiff and his wife on this same day boarded one of defendant's regular passenger trains for Greensboro. After the train had proceeded several miles, the defendant's ticket collector came through train and asked plaintiff for his ticket. The plaintiff produced one of the exchange tickets, which he had obtained from the defendant's agent at Greenville as aforesaid, and offered it for himself. He also informed the ticket collector that Mrs. Campbell, who was riding in an adjoining chair, was his wife, and he offered for

her transportation from Greenville to Greensboro the other exchange ticket obtained as aforesaid at Greenville.

6. "The said ticket collector asked plaintiff if he had mileage books and required him to produce them. Upon looking at the said mileage books said ticket collector returned one of them to plaintiff, but retained the one containing unused coupons for six hundred miles, which, calculated at the value of the whole book, was and is of the value of twelve dollars, and also retained the mileage exchange ticket from Greenville to Greensboro, which plaintiff had received for coupons for two hundred miles detached from said book, and he refused, although plaintiff demanded same, to give same to plaintiff, claiming that plaintiff had forfeited the ticket and the book. Said ticket collector then and there demanded payment of the fare of the plaintiff's wife.

8. "Thereafter, the plaintiff applied to headquarters of the defendant company, at Washington, District of Columbia, demanding the return of said mileage coupon and said mileage book, or five 35-100 dollars which he paid said ticket collector and said mileage book, but the defendant company refused and still refuses to surrender any of the same."

## ANSWER.

1. "That on November 1, 1910, the plaintiff purchased from the defendant at Greensboro, N. C., a certain interchangeable 1,000 mile individual ticket, Form Z, No. 49352; that said ticket was a special-rate ticket sold at reduced rate in consideration that the same should be purchased, held, presented and used by the plaintiff in conformity with the contract printed and written upon said ticket, signed by the plaintiff, and made a part thereof.

2. "That the plaintiff purchased said ticket at a reduced rate, less than the regular rate of fare upon the various lines of railroad stated thereon, in consideration of the agreements and obligations upon the plaintiff in said contract contained, and among others the following: '*Nontransferable.*

If this ticket, or ticket issued in exchange for coupons from this ticket, be presented to any agent or conductor by any other than the original purchaser, it will not be honored, but will be forfeited, and any agent or conductor of any line over which it reads shall have the right to take up and cancel such ticket or tickets.'

3. "That on November 20, 1910, the plaintiff still held said mileage ticket in which there were unused mileage coupons for 425 miles, more than enough to transport him from Greensboro, N. C., to Greenville, S. C., and return, the distance between the said points being 201 miles.

4. "That on November 20, 1910, the plaintiff purchased from the defendant at Greensboro, N. C., a certain other interchangeable 1,000 mile individual ticket, Form 3A, No. 6219; that said ticket was a special-rate ticket sold at a reduced rate, in consideration that the same should be purchased, held, presented and used by the plaintiff in conformity with the contract printed and written upon said ticket, signed by the plaintiff and made part thereof.

5. "That the plaintiff purchased said ticket at a reduced rate, less than the regular rate of fare upon the various lines of railroad stated thereon, in consideration of the agreements and obligations upon the plaintiff in said contract contained, and among others the following: '*Nontransferable.* If this ticket, or ticket issued in exchange for coupons from this ticket, be presented to any agent or conductor by any other than the original purchaser, it will not be honored, but will be forfeited, and any agent or conductor of any line over which it reads shall have the right to take up and cancel such ticket or tickets.' "

### STIPULATION.

"It is agreed between counsel that upon the trial of this case the following facts be admitted:

1. "The allegations contained in paragraphs 1, 2, 3, 4, 5, 6 and 8 of the complaint.

2. "That the ticket collector demanded cash fare for the plaintiff's wife, which was paid by the plaintiff.

3. "The allegations contained in paragraphs 1, 2, 3, 4 and 5 of the second defense in the defendant's answer.

4. "It is agreed that the defendant's answer be amended by setting up the facts in reference to interstate commerce law as are set up in its answer in the case of *George J. Douglass* v. *Atlanta and Charlotte Air Line Railroad Company,* with appropriate changes; and that the facts herein (but not conclusions of law) be admitted so far as that defense is concerned.

5. "The plaintiff does not admit by this stipulation that he knew the terms or conditions of the contract printed in the mileage books.

6. "It is agreed that a jury trial be waived and that the presiding Judge upon the pleadings and these stipulations render judgment as follows:

"If for the plaintiff, that the plaintiff be entitled to recover the mileage book taken up by defendant or at his option the value thereof twelve dollars; and twenty-five dollars damages.

"If for the defendant, that plaintiff take nothing by his suit and pay the costs."

## RULINGS OF JUDGE.

"Suppose the man had said to the conductor: 'I have a mileage book; I would like to give my friend here the benefit of riding on a two-cent mileage rate; pull his fare out of my mileage book.' There is no misrepresentation about that. Do you say that forfeits the book? The plaintiff had both books; they were both in his name. The ticket collector comes along and the plaintiff says: 'That is my wife sitting over there, here are my tickets, both of them signed in my name by me; I want to carry my wife on my book.' The conductor very properly declined to allow the wife to ride upon the book of the plaintiff; it was not a family ticket, it

was an individual book; and he was right in requiring the payment of her fare. But does that forfeit the book? It was not tendered by another than the owner; it was tendered by the owner and not under false pretenses, no false statement that his wife's name is other than it was. I think the purpose of the law is to prevent people from fraudulently using the books of other people. I mean fraudulently as to the railroad, not as to other people necessarily, but as to the railroad.

"Now, the question is, is this within the letter of a forfeiture, when it is presented under no disguise, under no false statement that his wife's name is other than it is, under no pretense that his wife owned the book, but under the admission that it was his book?

"The conductor did right not to accept the ticket, but did that forfeit this mileage, or did it forfeit his book? The fact that the railroad declined to accept it for his wife's transportation did not render it liable to forfeiture unless there was some misrepresentation. If there was a candid statement about the whole thing, and I infer from the pleading that there was no concealment, I don't see why the ticket should be forfeited, either in right, morals or law. I can see no reason for it.

"I, therefore, render judgment in favor of the plaintiff against the defendant for the sum of twelve dollars, the value of the mileage book taken up, and twenty-five dollars damages according to the stipulation of counsel."

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *If another than the plaintiff had presented the mileage book and ticket, both would have been forfeited:* 207 U. S. 205; 82 N. E. 777; 72 At. 50; 88 S. C. 421; Judson on Interstate Commerce, sec. 307.

*Mr. William G. Sirrine,* contra.

March 20, 1913. The opinion of the Court was delivered by

MR. JUSTICE WATTS This action was commenced in the Court of Common Pleas for Greenville county in April, 1911, for $1,900 damages, on account of the alleged illegal, wilful and wanton act of the defendant in confiscating the plaintiff's mileage book and refusing to return either mileage, exchange ticket or cash paid near Greenville, South Carolina, on November 24, 1910. The case was tried before Judge Prince, in June, 1912; upon an agreed state of facts, contained in the stipulation signed by counsel; a jury trial having been waived. This agreement should be set out in the report of the case. Judge Prince rendered judgment for the plaintiff for $37 and costs, and his rulings should be set forth in the report of the case. Defendants appealed, and questions the correctness of the presiding Judge's rulings and findings by six (6) exceptions, duly filed.

The whole question turns upon the point whether or not there was a contract printed in the mileage book by which plaintiff forfeited the same. This is raised by all of the exceptions.

The plaintiff purchased from the defendant company one mileage book, at Greensboro, North Carolina, for twenty dollars. At that time he was the owner of a part of one thousand mile ticket with four hundred and twenty-five miles unused for which he had paid twenty dollars.

This was November 20, 1910. On that day, he presented both mileage books to the defendant's agent at Greensboro, North Carolina, and asked for and obtained from him two mileage exchange tickets to Greenville, South Carolina. The distance from Greensboro to Greenville is two hundred miles. This left in one mileage book two hundred and twenty-five and in the other eight hundred miles. It does not appear that the ticket agent at Greensboro noticed that both mileage books were in plaintiff's name or that anything passed between them other than that the mileage books were

offered and accepted by the agent and exchange made. The plaintiff and his wife traveled upon the mileage exchange tickets from Greensboro to Greenville, and they were accepted without question by the conductor on the train.

They remained in Greenville until November 24, 1910, and, wishing to return to Greensboro on that day, plaintiff again presented both mileage books to the ticket agent of the defendant at Greenville, South Carolina, and asked for and received two mileage exchange tickets to Greensboro, North Carolina; the agent detaching two hundred miles from each mileage book, leaving on one twenty-five miles and on the other six hundred miles. It does not appear that the ticket agent noticed both mileage books were in plaintiff's name or that there was any conversation in reference to the matter.

Plaintiff and his wife boarded defendant's train for Greensboro and when the collector of tickets of defendant proceeded to collect tickets the plaintiff produced the two mileage exchange tickets that he had received from the ticket agent at Greenville, one for himself and the other for his wife, and upon demand produced both mileage books issued in his name. The ticket collector retained the mileage book containing six hundred unused mileage coupons and the mileage exchange corresponding therewith, claiming the same was forfeited under the terms and conditions of the ticket, and collected fare from plaintiff for his wife. Defendant's ticket collector required the plaintiff to pay full fare for the wife and confiscated the two hundred miles represented by the exchange and six hundred miles unused mileage in the mileage book. There was no evidence of concealment by the plaintiff or any fraud or misrepresentation. The books presented to the ticket agent for exchange were presented by the original purchaser. He had paid full value for the same and was in no manner attempting to defraud the defendant. He offered the books of mileage to the ticket agent at Greenville and received in exchange, therefor, without question, two tickets to Greensboro, North

Carolina. This was the person who was authorized to sell tickets, exchange mileage, etc. When the tickets were offered on the train the plaintiff offered them for both himself and wife. He, as original purchaser, was in possession of both mileage books, and there is no evidence that his wife was ever in possession of either mileage book. The conductor had no right to both exact fare for the wife and confiscate mileage. The claim of the railroad was satisfied when full fare was paid for the wife's passage, and the defendant had no right to confiscate the plaintiff's property in the manner it did. The ticket agent at Greenville issued the two tickets in exchange for mileage. When one was offered for the wife the ticket collector declined to receive it for her and demanded the fare, which was paid. The plaintiff certainly had the right to ride on his. Both husband and wife were then full passengers, having paid for their passage. Why should plaintiff's property, then, be confiscated and he mulched in damages? In *Smith* v. *Southern Railway Company,* 88 S. C. 425, Mr. Justice Hydrick says: "The company can act only by agents * * * It will not be heard to say that it manages its business in such a way that it makes a contract through one of its agents which it may violate through another with impunity to itself. There can be no doubt that the defendant is liable for the conduct of its agents, acting within the apparent scope of their authority. That is elementary law. It is a ticket agent's duty, and therefore, within the scope of his authority, to give passengers correct information with regard to their tickets, and provide them, upon payment of the fare, with proper tickets. Therefore, a passenger has the right to rely upon information given him by the ticket agent. The traveling public are not concerned with the management of the affairs of the railroad companies. They are not presumed to know the rules and regulations adopted by the companies for the guidance of their agents; nor are they presumed to know the limitations of the authority of the

agents of the companies. * * * There is some conflict in the authorities, but the weight of reason and trend of judicial thought is in favor of the doctrine that a passenger has the right to rely upon the statement and assurances of a ticket agent as to the sufficiency of the ticket furnished him as evidence of his right as a passenger, and that the carrier is liable for the errors and omissions of such agents resulting in injury to the passenger." *Childs* v. *Ry.*, 69 S. C. 327, 48 S. E. 352, and other cases quoted.

In this case, plaintiff presents two mileage books and asks the ticket agent to exchange for two tickets. This the agent does. An inspection on his part would have shown the plaintiff was the owner of both mileage books and did not need two tickets to carry one passenger. By act of the ticket agent at Greenville two tickets were given in exchange for mileage and when plaintiff's attention was directed that his wife could not use the ticket he paid full fare for her, and, yet defendant retained his mileage book when nothing was due the defendant.

Quoting from the opinion of Mr. Justice Hydrick, in *Smith* v. *Southern Railway*, 88 S. C. 427, 70 S. E. 1057, he says: "The foregoing cases also hold that it is the duty of the conductor, in such circumstances, to heed the reasonable explanations of a passenger as to his ticket, or his right to ride, and our own decisions are to the same effect. *Myers* v. *Railway*, 64 S. C. 514, 42 S. E. 598; *Chiles* v. *Railway*, 69 S. C. 327, 48 S. E. 252; *Tant* v. *Railway*, 87 S. C. 184, 69 S. E. 158; *Tolleson* v. *Railway*, 88 S. C. 7, 70 S. E. 311. The rule requiring the conductor to heed the reasonable explanation of the passenger, instead of allowing him to demand the payment of fare, on pain of expulsion from the train, works less hardship, inconvenience and expense on the carrier than the opposite rule would on the passenger; for it is generally an easy matter for the conductor to ascertain whether the explanation of the passenger is true or false, because the stations along the railroads are nearly all

connected by telephone or telegraph lines, which the agents of the company may use with little trouble, and at little or no expense. It is a serious matter to expel a passenger from a train. It subjects him to humiliation, and is calculated to wound the feelings of any self-respecting passenger. Therefore, the law allows punitive damages for the wrongful expulsion of a passenger, and, also, for compelling him to pay money under threat of wrongful expulsion. *Myers* v. *Railway* and *Tolleson* v. *Railway, supra.* Consequently the law is that a carrier must be allowed to resort to so harsh and extreme a measure only at the peril of being able to justify it."

Under the evidence in this case, that two ticket agents, acting in the apparent scope of their authority, exchanged tickets for mileage coupons for both plaintiff and his wife out of two mileage books, the property of the husband, and when plaintiff was told his wife could not ride on her ticket and he fully explained the facts to the ticket collector and upon demand paid full fare for her, the retention of the mileage book, his property, was an invasion of his rights not justified by the facts of the case.

The exceptions are overruled and judgment affirmed.